SHENK, J.
 

 On May 9, 1931, the plaintiff Hillside Water Company, a corporation, filed a complaint in the Superior Court in and for the County of Inyo, seeking to enjoin the defendants, City of Los Angeles, and its Board of Water and Power Commissioners from “flowing, pumping, or otherwise exporting any of the waters” from any of the defendants’ water wells located on the defendants’ lands overlying the underground basin known as the Bishop-Big Pine Basin in Inyo County, and from diverting and transporting any of the waters from said basin to any place or land not overlying said basin.
 

 The Bishop-Big Pine Basin comprises an area of about 95,000 acres. It is located in the Owens River water shed and is bounded (approximately) on the north by the northerly boundary of Inyo County, on the east by the Inyo Mountains, on the south by Tinnemaha dam, whicn is about seven miles south of the town of Big Pine, and on the west by the Sierra Nevada, a mountain range.
 

 Within this basin is an area called the Bishop cone which is described by metes and bounds in the findings and judgment. It is of irregular shape having generally the Owens River as its northerly and easterly boundary and the easterly line of the Inyo national forest as its westerly boundary. It is approximately five miles wide at a point about eight
 
 *680
 
 miles westerly and northerly from the Town of Bishop and its southern terminus is about five miles wide at a point some five miles northerly and westerly of the town of Big Pine. The distance from its northwesterly to its southerly terminus is about twenty miles and it follows generally the direction and flow of Bishop Creek. The wells belonging to the city and complained of herein are located within the Bishop cone. It is also within this area that the lands of the plaintiffs and interveners are situated.
 

 When the action was commenced the Hillside Water Company was the owner of approximately 6,600 acres, comprising a single tract of land within the basin. The complaint alleged the operation of about sixty-five ""ells by the defendants on the latter’s lands within the basin; also the withdrawal by means of said wells of the underground waters of said basin and the diversion thereof to the City of Los Angeles, a point outside the water shed; also that such withdrawal and diversion deprived the plaintiff of waters necessary for the irrigation of its lands and otherwise invaded its property rights.
 

 The Town of Bishop, a municipal corporation, the Bishop Union Grammar School District, a public corporation, the Bishop Union High School District, a public corporation, Hess Lumber Company, a corporation, and fourteen individuals- joined in a complaint in intervention. The relief sought by the interveners was substantially the same as that sought by the plaintiff, Hillside Water Company.
 

 Soon after the filing of the complaint in intervention fifteen other actions were commenced in the same county against the defendants named in the Hillside Water Company case, by persons owning agricultural lands located in the Bishop-Big Pine basin northerly and westerly of the Town of Bishop. The allegations in the fifteen actions and the relief sought therein were, for all general purposes, the same as those set forth in the complaint and the complaint in intervention in the Hillside Water Company case. All of said actions were consolidated for trial. During the course of the trial the City of Los Angeles acquired' title to the lands and rights of the Hillside Water Company, whereupon that company retired from the litigation.
 

 After a rather extended trial the court made findings in favor of the plaintiffs and interveners. It found, among
 
 *681
 
 other things not necessary to mention, that ail the lands within the Bishop cone are situated over the same body of underground water; that underneath all of said lands there is water-bearing strata, saturated and filled with water lying at various depths beneath the surface of the ground in formations of loose rock, boulders, sand, gravel, and other materials pervious to water; that along the southern boundary of the cone there is a dyke of material impervious to water; that all the underlying area of the cone has been and is in a state of continuity from its source; that the source of the underground water is the rain and melting snow from the slopes of the adjacent Sierra Nevada and the streams flowing down the slopes of the cone; that there is but little rainfall in the vicinity of the lands of the litigants and that nothing but sagebrush will grow on said lands without irrigation or subirrigation; that said land's are fertile and with irrigation and subirrigation produce valuable crops, vegetables and trees; that for many years prior to the commencement of the action “all parts of plaintiffs’ lands were irrigated and were productive by surface irrigation, the water supply by surface irrigation being added to, and the percolation loss thereof retarded by, said underground water plane, so that the service and utility of surface irrigation was thereby increased and extended; that prior to the commencement of the acts of the defendants complained of, the level of the subterranean water under plaintiffs’ lands was, in its natural and normal state, near the surface of the ground and said lands were thereby sufficiently moistened to produce crops of grass, the moistening of lawns, the raising of vegetables and the growing of trees; that all of the subterranean water within the area described as the Bishop cone in its natural and normal state, condition and quantity”, was and is reasonably necessary for the beneficial use of the lands of the plaintiffs and interveners and the proper utilization of their lands and the operation of the municipal water plant of the Town of Bishop for irrigation, domestic and agricultural purposes; that the defendants’ lands, exceeding 90,000 acres, are adjacent to and a large part thereof has a surface elevation generally lower than the lands of the plaintiffs and interveners; that the general movement of the underground water of the Bishop cone is easterly and southerly from the lands of the plaintiffs and interveners toward and
 
 *682
 
 under the lands of the defendants; that the plaintiffs and interveners, and others entitled by the terms of the decree of the United States District Court, known as the Chandler decree, to divert all the waters of Bishop Creek at their respective points of diversion, have applied all of said waters to beneficial use upon their respective lands; that said creek water is cold and retards plant growth; that excessive use of said surface water so necessarily applied has resulted in the growth of water grasses on the lands of plaintiffs and interveners ; that said lands have produced smaller crops than were produced thereon prior to the removal of said subirrigation water by the acts of the defendants.
 

 The court further found that the defendants possess, own and operate the Los Angeles aqueduct, which runs in a general southerly direction through the Bishop cone and then in a general southwesterly direction a distance of over two hundred miles to the City of Los Angeles; that the defendants have installed some 84 wells on the 90,000 acres of land owned by them in the Bishop-Big Pine basin; that 44 of their wells are within the area designated the Bishop cone; that the wells of the defendants in the Big Pine basin outside of the area called the Bishop cone are known as Big Pine group, consisting of 25 wells, and the Laws group consisting of 15 wells; that the operation in 1930 and 1931 of the 40 wells in the combined Big Pine and the Laws groups resulted in the extraction therefrom of 120,309 acre-feet of water; that the extraction of water from the Big Pine and Laws groups did not affect the water table underlying the lands of the plaintiffs and interveners; that during the same year, 1930-1931, the water extracted from wells within the Bishop cone resulted in the annual extraction of 79,688 acre-feet; that all the water so pumped and extracted by the defendants was conveyed and carried “outside the Owens river watershed and away from the lands overlying said subterranean water”; that all of said water so pumped and' extracted was and is conveyed by the defendants by means of ditches and canals and the Owens River to and into the Owens River aqueduct owned by the defendants and by means of said aqueduct carried outside of the Owens River watershed'; that the defendants intend to continue to pump and extract the subterranean water from underneath the lands of the plaintiffs and interveners by means of the wells in Bishop cone and other wells
 
 *683
 
 to be developed in that area; that by reason of the pumping and diversion operations of the defendants the level of the subterranean water under the lands of the plaintiffs and interveners “has been lowered a large number of feet”, and to the extent that it has been impossible to “properly” surface irrigate said lands for the growing and sustenance of fruit and shade trees, vegetables and crops, because said lands have become dry and arid due to the lack of subirrigation, and the surface water placed on said lands immediately seeps into the soil and is lost; that the supply of subterranean water underlying the lands in the Bishop cone has been partially exhausted, will become completely exhausted if the defendants continue their pumping operations, and that unless restrained the defendants will continue such operations ; that the defendants have not put the water withdrawn from underneath their lands in the Bishop cone to any consumptive use and have not diverted the same to storage; that there has been no necessity on the part of the defendants for the withdrawal by them of the water from the underground basin in the Bishop cone; that “no part of said water has been put to a beneficial or consumptive or necessary use, and that it is not true that the wells in said cone, or any of the water extracted from the underground waters therein by means of said wells have been dedicated to a public use of the City of Los Angeles or its inhabitants; that compensatory damages will not adequately compensate plaintiffs and interveners for the injury they will sustain by reason of the wrongful acts of the defendants; that if said wrongful acts are allowed to continue the damages suffered thereby will be impossible of proof, and that the plaintiffs and interveners have no adequate remedy at law.
 

 On its findings the court concluded that the plaintiffs (excepting Hillside Water Company), and interveners were entitled to have the subterranean water underlying each of their respective parcels of land and underlying all of the area in the Bishop cone “remain and be in its natural and normal condition unaffected in any manner whatsoever by any of the pumping operations, or by the extractions or taking of any water, except such quantity of water as may be reasonably necessary for beneficial use and used upon the lands belonging to the defendants located within the area” described as the Bishop cone; also that the defendants should
 
 *684
 
 be forever enjoined from extracting or diverting away from said area in any manner whatever any of the subterranean waters in said area, or from constructing any additional wells in said area for the purposes of extracting water for use outside of said area. Judgment was entered unconditionally and perpetually enjoining the defendants in accordance with the findings and conclusions of the court. From this judgment the defendants have appealed.
 

 Since the filing of the respondents’ brief, and upon stipulation of the parties affected thereby, this court has ordered the reversal of the judgment as to all intervener-respondents save the two school districts and A. Burton. The respondents’ brief will be considered to be on behalf of the plaintiffs in the fifteen independent actions who will be referred to as the respondents, and on behalf of the remaining respondentinterveners whose cases will be specially treated.
 

 The total acreage of the respondents within the Bishop cone is approximately 640, practically all of which is under irrigation. The City of Los Angeles owns about 90,000 acres in the Bishop-Big Pine basin. All of this acreage is not within the Bishop cone. It owns or controls all the area in the cone excepting about 1300 acres—slightly in excess of two sections. There are within the cone about 100 sections. The city therefore owns or controls about 98 per cent of the area in the cone. Within its area the defendants, during the years 1930 and 1931, extracted by means of their Warm Springs and Bishop groups of wells, a total of 79,688 acre-feet of water, which was sufficient, during that period, to supply domestic use for a population of about 300,000. It was against the operation of those two groups of wells that the trial court issued its perpetual and unconditional injunction.
 

 The only irrigation practiced by the respondents on their lands has been and is by surface irrigation with water flowing by gravity through Bishop Creek or its two forks or through irrigation ditches leading therefrom. Bach respondent enjoys an adjudicated and unrestricted water right to the waters of Bishop Creek and has all the water he desires to use for irrigation from those sources. The extraction of water from the underground basin in 1930 and 1931 by means of the defendants’ wells in the Bishop cone resulted in a lowering of the water table from two and one-half to four feet. It
 
 *685
 
 is this lowering of the water table, the consequent greater use of the surface irrigation waters of Bishop Creek, the resultant alleged decreased croppage and the increased growth of water grass, of which the respondents complain.
 

 The complaints were drafted and the cases were tried and decided by the trial court on the theory that the right of each plaintiff as an overlying land owner to have the underground waters remain in their natural condition was and is an absolute and unconditional right under all circumstances regardless of the quantity of the supply or the reasonableness of the use or method of use of the water. The judgment was signed on August, 21, 1934. Without doubt the trial court framed its decree and issued its injunction in accordance with the law as enunciated in such cases as
 
 Miller
 
 v.
 
 Bay Cities Water Co.,
 
 157 Cal. 256 [107 Pac. 115, 27 L. R. A. (N. S.) 772], and
 
 Herminghaus
 
 v.
 
 Southern California Edison Co.,
 
 200 Cal. 81 [252 Pac. 607], The trial was held about two months after the decision of the trial court in the Lodi case.
 
 (City of Lodi
 
 v.
 
 East Bay Municipal Utility List.,
 
 7 Cal. (2d) 316 [60 Pac. (2d) 439].) Both cases were decided in the trial court before the decision of this court in
 
 Peabody
 
 v.
 
 City of Vallejo,
 
 2 Cal. (2d) 351 [40 Pac. (2d) 486], which at some length interpreted and declared the effect of the amendment of section 3 of article XIV of the Constitution in 1928. The Lodi case by injunctive order in effect required the use of an average annual runoff of 815,000 acre-feet of water of the Mokelumne Eiver with its consequent wastage in order to maintain unimpaired the underground water supply of the city of Lodi of 3,600 acre-feet annually.
 

 The present injunctive order requires that the underground water table be maintained in its natural state uninfluenced by the pumping operations of the defendants by means of its Warm Springs and Bishop groups of wells. This in effect prevents the beneficial utilization of water beneath 98 per cent (or about 90,000 acres) of the area in the Bishop cone in order that the water table beneath two per cent of this area be maintained in its natural condition. The Constitution now requires these waters “be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented”.
 

 
 *686
 
 To prevent what appeared to be an unreasonable method of the use of the underground waters and at the same time recognize and protect the rights of the city in the Lodi case, a physical solution of the problem was declared to be available and was ordered. This seemed to be the appropriate, if not the only, course to pursue, inasmuch as the city of Lodi was a governmental agency against which under the circumstances there appearing the remedy in damages would be improper. The judgment was reversed and the cause remanded with instructions to enter judgment accordingly. Likewise the judgment herein must be made to conform to the new state policy in whatever respect it may be in contravention thereof.
 

 Here we are not relegated exclusively to the alternative of a physical solution. Except as to the school districts such a solution need not be applied for the reason that the remedy of the remaining respondents in damages is adequate.
 

 The law as announced in the case of
 
 Miller
 
 v.
 
 Bay Cities Water Co., supra,
 
 to the effect that the right of an overlying land owner to the percolating water beneath his lands is analogous to the riparian right, has not been changed and has been recognized in the subsequent cases declaring the new law. Thereunder these respondents have had and still have the right to the use of the underground waters in the Bishop cone as a supporting underground water supply available to and for the benefit of their farming operations. It is readily seen that the use of this underground supply as an undersupport for irrigation or other surface uses would minimize the requirements of surface irrigation and result in benefit to the surface soil and crop conditions. And it may not be rightly said that such use is not a beneficial use of the underground waters. It is also not difficult to conclude that some detriment has resulted to the respondents’ lands by the defendants’ pumping operations. The extent of that detriment and its value in money may not be easy to determine, but it is not impossible of determination as the respondents urge. It is somewhere between a nominal sum and the total market value of the land. It is far from the latter because of the abundant and perpetual supply of water for surface irrigation from Bishop Creek and its tributaries. On the other hand it may not be said to be nominal because of the proof that vegetation will not grow as abun
 
 *687
 
 dantly, first, because of the lower temperature of the surface irrigation water, and secondly because of the resultant change in soil conditions. These changes in conditions, caused by the defendants, may affect the market value of the lands and to that extent are substantial. The nature of the soil conditions and the movement of the percolating waters necessarily rendered the question of the extent of the water table recession difficult of ascertainment and proof; but the trial court found that during the operation of the wells in the Bishop cone the extraction of water exceeded the replenishment and this finding has support in the evidence. The respondents concede that their status as holders of only 640 acres is insignificant as compared with that of the defendants who own all of the remaining water rights in the area, but they urge that in view of this unequal position of the parties the defendants should not have cast upon them, as the few survivors of a long controversy in the valley, the burden of expense and anxiety of commencing injunction proceedings, and that the defendants, in the first instance, should have filed condemnation proceedings wherein the rights of all parties could have been ascertained and safeguarded.
 

 Assuming the significance of the respondents’ argument that the City of Los Angeles, in the first instance, should have brought condemnation proceedings or purchased their water rights, nevertheless the opportunity is still available to accomplish that result by the process of reverse condemnation. This solution of the controversy is requested by the defendants in the event it be determined that the respondents’ rights have been violated. Two objections to this course have been urged by the respondents. The first is that the trial court found that all of the water in the Bishop cone was necessary to maintain the underground water table in its natural state and therefore that there was no surplus for appropriation and use outside the water shed. But whether there be a surplus or no surplus is no obstacle to the operation of a condemnation proceeding. The second is that the trial court found that the defendants have not devoted the waters withdrawn from the area in the Bishop cone to any beneficial use, either consumptive or storage, and that no public use had therefore attached. This finding lacks support in the record. The uncontradicted evidence is that the water pumped from this area in 1930 and 1931 was con
 
 *688
 
 veyed by the Los Angeles aqueduct to the distributing system of the city and devoted to the general uses of the city and its inhabitants; and that in the dry years of 1930 and 1931 the water from the Bishop cone underground supply afforded a very material portion of the city’s water supply. These facts were established by the undisputed oral evidence and likewise find support in the admissions of the pleadings.
 

 When a public use has attached a prohibitory injunction should be granted only in the event that no other relief is adequate.
 
 (Montecito Valley Water Co.
 
 v.
 
 Santa Barbara,
 
 144 Cal. 578 [77 Pac. 1113].) In such cases compensation in lieu of injunction is preferred.
 
 (Newport
 
 v.
 
 Temescal Water Co.,
 
 149 Cal. 531, 538 [87 Pac. 372, 6 L. R. A. (N. S.) 1098].) The doctrine that intervention of a public use will foreclose the right to an injunction rests not only on estoppel. The doctrine may be applicable even though the aggrieved party be in ignorance of the violation of his rights. In other words, implied dedication to public use is not essential to the operation of the doctrine. Public policy in favor of a continuance of the public use may also be invoked to prevent a prohibitive injunction.
 
 {Peabody v. Vallejo, supra,
 
 p.378.) When public use has attached for any recognized reason reverse condemnation proceedings may be invoked and applied. No good reason has been advanced why such a proceeding should not be employed in this case. It would appear to be the only appropriate course to pursue. To that end the judgment must be reversed. (See
 
 Collier
 
 v.
 
 Merced Irr. Dist.,
 
 213 Cal. 554 [2 Pac. (2d) 790].)
 

 The intervener Burton is shown to be the owner of three lots in the Clarke addition to the Town of Bishop. He was the only intervener omitted from the order of reversal on the stipulation hereinbefore mentioned. The judgment as to him should likewise be reversed. If his water right has been infringed by the pumping operations of the defendants, compensation therefor can be fixed in the reverse condemnation proceedings made available to the parties by the order of reversal.
 

 A physical solution should be found and applied with reference to the rights of the school districts. The Bishop Union Grammar School has been supplied with water for drinking and garden purposes from an artesian well the pressure of which receded during the pumping operations
 
 *689
 
 of the defendants. Obviously it is within the power of the defendants to insure an adequate supply of water to this school and the court should safeguard that right by its judgment without the necessity of a prohibitive injunction, with the consequence above indicated, except in aid of the enforcement of the physical solution applied.
 

 It is conceded that the Bishop Union High School obtained water entirely from the mains of the water system of the Town of Bishop. By reason of the reversal of the judgment in favor of that town, by stipulation, it is assumed that the defendants are in control of the distributing system from which the high school was furnished with water. If so the defendants may, by provision in the judgment, be compelled to continue the supply. If this assumption be incorrect the court, on a reversal of the judgment, will be in position to provide otherwise for an adequate water supply to this school and, by reserving jurisdiction in the premises, insure a continuance thereof.
 

 The judgment is reversed and the cause remanded for proceedings in condemnation in accordance with the views herein expressed. Under the circumstances the respondents should receive their costs on this appeal.
 

 The judgment is reversed.
 

 Curtis, J., Langdon, J., Waste, C. J., Nourse, J.,
 
 pro tem.,
 
 and Edmonds, J., concurred.
 

 Rehearing denied.