[Civ. No. 6703.   Third Dist.   Feb. 26, 1942.]

W. J. PECKWITH et al., Respondents, v. ANTONE LAVEZZOLA, Appellant.

A. J. Just for Appellant.

James Snell and Thomas O. McCraney for Respondents.

THOMPSON, Acting P. J.—This is a suit to quiet title to water from springs and to an easement for its conveyance, which are appurtenant to the land of the defendant. The water was appropriated by the plaintiffs and used by consent of the defendant to augment their supply of a privately-owned public utility company which for many years has sold water to the inhabitants of Downieville for domestic and irrigation purposes. This is not an action to partition the water of springs. Each party sought to quiet title to the water of the springs. The plaintiffs' chief contention is that the defendant is estopped from interfering with the use of the water because for several years it was used with his knowledge for sale to the public, as an essential exercise of the power and duty of a public utility company.

The complaint alleges, in effect, that the plaintiffs acquired title to the water of the McDougall Springs, and to the easement for its conveyance to their plant, in 1932, by adverse possession, and that all of the water has been used by them in connection with their Durgan Flat Water Company, a public utility, to supply the inhabitants of Downieville, Sierra County, with water for domestic and irrigation purposes.

The answer denies the material allegations of the complaint. In a cross-complaint, the defendant asserts that plaintiffs only temporarily used a portion of the water from said springs, by express consent of the defendant and that the water was not essential for public use. It is alleged that the water was appurtenant to and necessary for use on defendant's land situated on Piety Hill in Downieville. The cross-complaint asks that title to the water of said springs and to said pipe line and easement be quieted in the defendant. It also prays for such other and further relief as may be meet in the premises.

At the trial it was stipulated that plaintiffs own and operate the Durgan Flat Water System in Downieville, Sierra County, as a public utility, and that they have supplied the families at twenty-five dwelling houses in that town, for a period of twelve years, with water for domestic and irrigation purposes; that the bulk of the water of plaintiffs' system is obtained from sources other than the springs in question; that the water piped from McDougall Springs, which is sometimes called Davidson Springs, was stored temporarily in a large tank which is situated 350 feet below the springs, from which tank a pipe conveys the water to defendant's land on Piety Hill, and that said water, for many years, has been and now is beneficially and necessarily used on said land for domestic and irrigation purposes; that plaintiffs tapped said pipe in 1932, at a point 150 feet below the tank, and diverted said water into their Durgan Flat Water System, and sold it to the inhabitants of Downieville for a period of eight years; that in 1939, shortly before the commencement of this action, the defendant disconnected said pipe and thus prevented plaintiffs from continuing to use the water from said springs. The evidence satisfactorily shows that the water of McDougall Springs was acquired by the defendant's predecessors in title to his Piety Hill land in 1864, as an appurtenance thereto, and that it has been used continuously for the benefit of that land ever since that time.

The court found that the defendant's predecessors in title owned, and that the defendant still owns, several lots on Piety Hill, to which the water from said springs and the pipe line are appurtenant, and from which source he has continuously supplied his land and premises with necessary water for domestic and irrigation purposes.

The court further found that plaintiffs own and operate the Durgan Flat Water System as a public utility, by means of which they have supplied water for domestic and irrigation purposes for a period of twelve years to twenty-five families who reside on Piety Hill in Downieville; that plaintiffs, in effect, acquired title in 1932 to the water of McDougall Springs by adverse possession, and by purchase from the defendant and his predecessors for a valuable consideration; that the plaintiffs are now the owners and entitled to possession of said water subject to the right of defendant to use the residue thereof which is not consumed by plaintiffs. It is also found that plaintiffs mingled said water from the McDougall

Springs with the water of their Durgan Flat Water System, a public utility, and sold it to the residents of Downieville, for a period of eight years, with full knowledge thereof on the part of the defendant, and that he is therefore estopped from claiming title thereto or from interfering with such vested public rights to the water of said springs.

The finding that plaintiffs purchased for a valuable consideration, from the defendant's predecessor in title, the water of McDougall Springs, or the easement in question, is not supported by the evidence. We are directed to no evidence that plaintiffs ever purchased from the defendant or any other person, the springs, or any portion of the water therefrom, or the easement appurtenant thereto; nor does the record support title in the plaintiffs' to any portion of the water, or to the easement, by adverse possession. Indeed, the court did not specifically find that plaintiffs acquired title to the water of the springs, or to the easement, by adverse possession. We do not understand that the respondents now contend they acquired title by adverse possession. Their use of the water from those springs lacks the elements necessary to constitute title by adverse possession. We are thoroughly convinced the plaintiffs did not acquire title to any portion of the water of the McDougall Springs, or to the easement, by either purchase or by adverse possession. On the contrary, it clearly appears that the defendant and his predecessors held title to the water of those springs as an appurtenance to the land which they owned on Piety Hill in Downieville. Those springs were commonly known as the McDougall Springs or the Davidson Water Works. It does not satisfactorily appear those water rights were ever abandoned. They were appurtenant to the land on Piety Hill which was owned by the defendant and his predecessors in title since 1864. They used the water from those springs whenever they had occasion to do so. Those springs were always taxed with their land. The records show that they paid taxes on the "Davidson Water Rights."

The court found that the defendant owns four particularly-described lots on Piety Hill; that he and his predecessors in interest "have owned, possessed and occupied said Piety Hill for more than eighty years last past"; that "the predecessors in interest of defendant acquired and constructed said McDougall Springs Water System . . . (which) ever since has been and now is appurtenant to Piety Hill, subject to the

rights of plaintiffs as hereinafter set forth." The last-mentioned findings are supported by the evidence.

The court then finds that for a period of twelve years the plaintiffs owned and operated the Durgan Flat Water System at Downieville as a public utility by means of which they supplied and sold to twenty-five of the inhabitants of that town water for domestic and irrigation purposes, and that they connected the water pipes of the McDougall Springs Water System, about 1929, with their Durgan Flat Water System, and appropriated the water from said springs, thus augmented, to supply the public needs; that plaintiffs have ever since maintained such diverting pipes and have used the water from said springs "openly, continuously and uninterruptedly," without objection. But the court did not find that plaintiffs diverted or used the water with a claim of title thereto. The court then found that the plaintiffs and the defendant were joint owners of the water of said springs on the theory, we assume, that the defendant is estopped from denying title to such portion thereof as he has permitted plaintiffs to use for public purposes. Finally, as a conclusion of law, the court found that plaintiffs are the owners and entitled to possession of the water of said springs and to the pipes and easement incident thereto, subject to the right of the defendant to use so much of the remainder of said water of the springs as is necessary and beneficial to his Piety Hill property for domestic and irrigation purposes, each party to pay one-half of the expense of maintaining the McDougall Springs Water System.

The evidence clearly shows that the plaintiffs tapped the water pipes belonging to the defendant, and his predecessor in title, not with a claim of right, but by defendant's consent and with his permission. Mr. Charles E. Herron, a former owner of the defendant's land, to which the springs are appurtenant, testified that Mr. John Peckwith told him they were short of water sufficient with which to supply their customers and that he asked permission to connect their water system with defendant's pipes leading to the McDougall Springs, and that he, Mr. Herron, replied, "I don't care if you use it temporarily until I get ready to hydraulic." That permissive use of the water was testified to by another witness. That evidence is not contradicted. It appears to be undisputed and conclusive in that regard. Pursuant to

that request, the plaintiff tapped the pipes of the defendant and continued to use at least a portion of the water from those springs for several years without opposition. We assume the record establishes the fact that plaintiffs used the water from the springs by mere permission and not with a claim of ownership. That evidence refutes the theory of possession of the water by either purchase or by adverse possession.

Incidentally it is contended plaintiffs are not entitled to retain the use of the water from the McDougall Springs because they maintained a defective system of pipes which permitted waste of a great quantity of water. It is conceded the record does not establish that fact, but it is asserted the trial judge observed that fact while he was viewing the premises. We have no way of determining what facts the judge may have acquired in viewing the premises. His impressions of conditions observed on the premises remain hidden in his own mind. They are not a part of the record on appeal. Knowledge of facts secured by a judge or a jury in viewing premises may be presumed on appeal in support of findings or a judgment, but mere speculation regarding the effect of impressions which may have been secured in that manner may not be indulged in to upset a judgment when there is substantial evidence in the record to the contrary.

It is true that conditions observed by a judge or a jury, while inspecting the premises, constitute independent evidence which may be considered by them in determining the issues involved. (*Gibson Properties Co.* v. *Oakland*, 12 Cal. (2d) 291 [83 Pac. (2d) 942]; *Hatton* v. *Gregg*, 4 Cal. App. 537 [88 Pac. 592].) Since the court found in this case that the water was taken by plaintiffs and necessarily used by them for the benefit of the public, on appeal we may not assume that finding is nullified by contrary facts ascertained by the judge while he was viewing the premises in the absence of proof thereof in the record. An appeal must be determined on the record which is presented for review pursuant to the method required by the statute.

The remaining and the most important question to be determined on this appeal is whether the defendant is estopped from asserting title to the water of the springs and to the easement, so as to interfere with plaintiffs' use and control thereof, as a public utility, for the reason that the

water was sold to the public for several years with defendant's knowledge, and that the public interest is therefore paramount to defendant's title to the water. Apparently that is the theory upon which the court quieted title to the water and to the easement, in plaintiffs. If that public interest prohibits the defendant from asserting his title and control of the water on account of the public utility nature of the use to which the property is devoted, is it not necessary that a court of equity should award the defendant just compensation for the appropriation of his property, on the theory that the doctrine of reverse condemnation is involved?

There is no doubt the record contains ample evidence to support the findings of the court that plaintiffs continued to use the water from McDougall Springs for a period of eight years, to augment the supply of their Durgan Flat Water System, a public utility, from which they continuously sold water to the inhabitants of Downieville with knowledge thereof on the part of the defendant. It follows that the defendant may not interfere by injunction or otherwise with that public right to the continued use of the water in that manner. The defendant is therefore not entitled to an absolute decree quieting title to the water and easement in him.

▆ Where water from springs, or from any other private source, is appropriated and used for the benefit of the public for a considerable period of time, with full knowledge on the part of the owner, he may be estopped from interfering with such vested public use by means of injunction, ejectment or a suit to quiet title. Under such circumstances, his remedy will be confined to a mere right to recoup adequate damages to compensate him for the loss of his property on account of such appropriation. This remedy is based on the theory that although the intervening public rights prevent interference with the use and control of the property on the part of the owner, he is, nevertheless, entitled to compensation on the principle applicable to a proceeding in reverse condemnation. Private property may not be taken, even for the benefit of the public, without just compensation. That principle has been frequently announced by the decisions of our courts. (*Gurnsey* v. *Northern Cal. Power Co.,* 160 Cal. 699 [117 Pac. 906, 36 L. R. A. (N. S.) 185]; *Collier* v. *Merced Irr. District,* 213 Cal. 554, 563 [2 Pac. (2d) 790]; *Peabody* v. *City of Vallejo,* 2 Cal. (2d) 351, 377 [40 Pac. (2d)

486]; *Hillside Water Co.* v. *Los Angeles,* 10 Cal. (2d) 677, 688 [76 Pac. (2d) 681].) In the Collier case, *supra,* it is said in that regard:

" 'It is perfectly true that not even a corporation possessing the power of eminent domain may under the Constitution (art. I, sec. 14) take or damage private property without first making adequate compensation. But this right may be waived by the owner and in order to prevent the obstruction of progress he must be held to diligence in asserting his right as against a concern administering such a public use. If he allows his property right to be invaded and either taken or damaged for a public use and the public right has so far intervened as to justify the belief that objection has been waived, then in law the property right so taken or damaged is to that extent dedicated to the public use.' (*Conaway* v. *Yolo Water & Power Co.,* 204 Cal. 125, 131 [266 Pac. 944, 946, 58 A. L. R. 674].)"

In the Gurnsey case, *supra,* at page 709, quoting with approval from page 53 of Jones on Telegraph and Telephone Companies, the court says with respect to the foregoing principle:

" 'In many cases Telegraph and Telephone Companies enter upon the land of another without the latter's knowledge or consent, but the fact that they do, *or that he permitted them to do so,* does not give the company a title or right of way or estop him from maintaining an action for damages; and yet it may preclude him from maintaining any action of ejectment; . . . and should he stand by until the line is completed and in operation and public interests *have become involved,* he will be denied the right to maintain an action of ejectment or the right to enjoin them. His only remedy under such circumstances is a proceeding brought to recover damages.' " (Italics added.)

After citing many cases in support of the foregoing principle, the court continues to say:

"In these latter cases it is true there were oral agreements under which the railroad companies went into possession of the land, and in the last case the construction of the canal was with the tacit consent of those who sought to have it abated and removed from their land as a nuisance. The principle, however, upon which the right to maintain ejectment *or to quiet title* or to abate the canal was denied in those cases,

was that as public interests had intervened through the construction and operation of these public agencies before the actions in those cases were commenced, any right of the parties to disturb them in their possession of the property was thereby lost, and only an action to recover compensation for the land taken could be available. In principle there can be no difference, as far as the application of the rule of public policy is concerned, whether the entry is by original consent of the owner, or he permits it to be made and attempts to assert no right until after the public interests have intervened.'' (Italics added.)

In both the Peabody case and the Hillside Water Company case, *supra,* the courts held that the defendants, under such circumstances, could not interfere with vested public rights acquired in property by means of injunction or otherwise, but on the contrary that the owners were confined to their remedy for damages for the appropriation of the property, on the theory of reverse condemnation.

In the present case the court has properly held that the defendant is not entitled to a decree quieting title to that portion of the water of McDougall Springs which has been appropriated and used by the plaintiffs for a number of years in operating a public utility in the name of Durgan Flat Water System, by selling the water to the inhabitants of Downieville, because of the intervention of the public right, and that the defendant is therefore estopped from asserting his right to the water. But the court neglected to ascertain and fix the amount of damages to which the defendant is entitled as just compensation for the value of the property thus appropriated and used for the public benefit. This is a suit in equity. It is inequitable to deprive the defendant of his property, even though it be taken for public use and benefit, without awarding him just compensation therefor. Such damages may be awarded in an equitable action to quiet title under the general prayer for ''such other and further relief . . . as may seem meet in the premises.'' Having acquired jurisdiction in this equitable action complete justice should be afforded by compensating the defendant for the value of his property which is taken. Since there is no evidence to support plaintiffs' claim of title to the water by either purchase or by adverse possession, the only theory upon which the judgment for plaintiffs may stand is that the water was used incident to a public utility. That being so,

the defendant is entitled to just compensation for the property which is converted to a public use.

The judgment is reversed and the trial court is directed to ascertain the value of the water and easement taken and appropriated for the benefit of the public, and award judgment to the defendant for that amount. Title to the water and easement should be quieted in plaintiffs, subject to payment of compensation therefor, and subject also to defendant's right to use and enjoy the benefit of whatever portion thereof is not required for public use, as heretofore decreed by the court. It is so ordered. The appellant may recover his costs.

Tuttle, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 23, 1942.