STATE OF CALIFORNIA
v.
UNITED STATES DISTRICT COURT IN AND FOR SOUTHERN DISTRICT OF CALIFORNIA et al.

UNITED STATES v. UNITED STATES DISTRICT COURT IN AND FOR SOUTHERN DISTRICT OF CALIFORNIA, NORTHERN DIVISION et al.

CHOWCHILLA WATER DIST. et al.
v.
UNITED STATES DISTRICT COURT IN AND FOR SOUTHERN DISTRICT OF CALIFORNIA et al.

Nos. 14243, 14244, 14284.

United States Court of Appeals
Ninth Circuit.

June 3, 1954.

No. 14243:

Edmund G. Brown, Atty. Gen., of California, B. Abbott Goldberg, Asst. Atty. Gen. of California, for petitioner.

Claude L. Rowe, Fresno, Cal., for real parties in interest herein.

J. E. Simpson, Fred Horowitz, William H. Nichols, Los Angeles, Cal., for respondents.

Robert H. Mullen, City Atty., Lodi, Cal., F. A. Silviera, City Atty., Merced, Cal., William Biddick, Jr., City Atty., Stockton, Cal., Allen Grimes, City Atty., Modesto, Cal., amici curiae.

No. 14244:

Herbert Brownell, Jr., Atty. Gen., J. Lee Rankin, Asst. Atty. Gen., William H. Veeder, Sp. Asst. to Atty. Gen., for petitioner.

Claude L. Rowe, Fresno, Cal., for real parties in interest herein.

J. E. Simpson, Fred Horowitz, William H. Nichols, Los Angeles, Cal., for respondents.

Robert H. Mullen, City Atty., Lodi, Cal., F. A. Silviera, City Atty., Merced, Cal., William Biddick, Jr., City Atty., Stockton, Cal., Allen Grimes, City Atty., Modesto, Cal., amici curiae.

No. 14284:

Maddox & Abercrombie, Erling H. Kloster, Visalia, Cal., Edmund G. Brown, Atty. Gen. of California, B. Abbott Goldberg, Asst. Atty. Gen. of California, Green, Green & Plumley, Madera, Cal., Peckinpah & Peckinpah, Fresno, Cal., Harold M. Child, Selma, Cal., John R. Locke, Jr., Visalia, Cal., Henry & Kuney, Tulare, Cal., Leroy McCormick, Visalia, Cal., Jas. R. McBride, Lindsay, Cal., for petitioners.

J. Edward Simpson, Fred Horowitz, William H. Nichols, Los Angeles, Cal., for respondents.

Before STEPHENS, BONE and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

We are entertaining petitions for a writ of prohibition or mandamus or certiorari arising out of the consolidated case of Rank v. Krug, Civ. Nos. 685, 668, 681, 680, and 832 ND, which is pending in the United States District Court for the Southern District of California.[1] Three separate petitions were filed, one by the United States,[2] one by the State of California,[3] and one by certain water districts[4] which we shall designate collectively as "Chowchilla".[5] Since each petition poses some different questions, we shall treat each one separately.

A brief historical statement of the basic facts of this litigation will assist in the understanding of the issues treated herein.[6]

As part of the Central Valley Project in California, the United States has built Friant Dam on the upper reaches of the San Joaquin River. From Millerton Lake, which is formed by the river waters behind Friant Dam, water is being diverted either north into the Madera Canal or south into the Friant-Kern Canal for use outside the San Joaquin River drainage basin. The water users on the lower San Joaquin River are being, or by the plan of the Project are to be, supplied with water brought from the Sacramento River to the Mendota Pool via the Delta-Mendota Canal. The case of Rank v. Krug was brought by persons taking and using or claiming the right to take and use water of the San Joaquin River between Friant Dam and the Mendota Pool.

1. See United States v. United States District Court, 9 Cir., 1953, 206 F.2d 303. See also Rank v. Krug, D.C.S.D.Cal.1950, 90 F.Supp. 773.

2. 9th Circuit Docket No. 14244.

3. 9th Circuit Docket No. 14243.

4. (9th Circuit Docket No. 14284): Chowchilla Water District, Delano-Earlimart Irrigation District, Exeter Irrigation District, Ivanhoe Irrigation District, Lindmore Irrigation District, Lindsay-Strathmore Irrigation District, Lower Tule River Irrigation District, Madera Irrigation District, Orange Cove Irrigation District, Porterville Irrigation District, Saucelito Irrigation District, Stone Corral Irrigation District, Terra Bella Irrigation District, and Tulare Irrigation District.

5. 9th Circuit Docket No. 14284.

6. For a fuller statement of the facts see United States v. United States District Court, 9 Cir., 1953, 206 F.2d 303; Rank v. Krug, D.C.S.D.Cal.1950, 90 F.Supp. 773; see also, United States v. Gerlach, Live Stock, 1949, 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231.

Rank v. Krug was originally filed in the Superior Court for the State of California in and for the County of Fresno. The named defendants were the United States Secretary of the Interior, certain officials of the United States Bureau of Reclamation who were in positions of responsibility at Friant Dam and in the Central Valley Project, and certain California water districts which had entered into contracts with the United States to purchase quantities of water impounded by it at Millerton Lake.[7] On motion of the defendant officials, the case was removed to the United States District Court for the Southern District of California.

The complaint in Rank v. Krug contains three alternative prayers for relief.[8] The first prayer seeks an injunction against the named bureau officials to prevent them from impounding and diverting the waters of the San Joaquin River. The second prayer asks that the court make a "physical solution"[9] of the water controversy. The third prayer is that the court order an "inverse or reverse condemnation".[10]

7. Case No. 74627, Department 4 of the Superior Court of the State of California in and for the County of Fresno, by Everett G. Rank, Duane M. Folsom, Bertha Folsom, E. Florence Folsom, Evelyn Lydia Rank, J. E. Cobb, Ruby Cobb, Lawrence D. Cobb, Marjorie E. Sims, L. L. Howard, Alma Howard, and Amelia Ann Holland, Plaintiffs v. Julius A. Krug, as Secretary of the Interior of the United States of America, Michael W. Straus, as Commissioner of the Bureau of Reclamation of the United States of America, Richard Boke, as Regional Director of the Bureau of Reclamation of the United States of America, Martin Blote, as Regional Water Master of the Bureau of Reclamation of the United States of America, Jack Rodner, as District Manager of the Bureau of Reclamation of the United States of America, R. K. Durant, as Construction Engineer and Resident Engineer at Friant Dam for the Bureau of Reclamation of the United States of America, Joseph A. Secara, Arnold Saliaberry, Chester A. Ridgeway, Earl Yocum and Carl Gaumnitz, as Directors of the Madera Irrigation District, a public corporation, The Madera Irrigation District, a public corporation, John Doe Directors One to Two Hundred, John Doe Districts One to Forty, Richard Roe Directors One to Five, Richard Roe Irrigation District, Milo Marshall, Albert Davis, Frank Panero, D. L. Shifflep and E. J. Girard, as Directors of the Southern San Joaquin Municipal Utility District, a public corporation, Southern San Joaquin Municipal Utility District, a public corporation, and John Roe One to One Thousand, Julius A. Krug, Michael W. Straus, Richard Boke, Martin Blote, and Jack Rodner, and R. K. Durant, Defendants.

8. Although the ultimate facts are alleged only once, the prayers state three separate and alternative claims for relief. The facts as pleaded, if true, establish three separate rights which would entitle the plaintiffs to a remedy and apply to each prayer. In the circumstances it was not necessary to re-allege and re-plead the facts for each separate cause of action. The requirements of Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., are satisfied.

9. The term "physical solution" as used in California water law apparently contemplates a court-enforced plan for making as much water as possible available, through the construction of dams or canals or other physical or mechanical instruments, to all the lawful claimants of the waters in dispute. In order to effectuate the plan, the rights of each claimant to the waters must be first determined. See: Peabody v. City of Vallejo, 1935, 2 Cal. 2d 351, 40 P.2d 486, 497; Rancho Santa Margarita v. Vail, 1938, 11 Cal.2d 501, 81 P.2d 533, 562; Tulare Irr. Dist. v. Lindsay-Strathmore Irr. Dist., 1935, 3 Cal.2d 489, 575, 45 P.2d 972; City of Lodi v. East Bay Mun. Utility Dist., 1936, 7 Cal.2d 316, 341, 60 P.2d 439. See also Rank v. Krug, D.C.S.D.Cal. 1950, 90 F.Supp. 773, 803.

10. The term "inverse or reverse condemnation" contemplates the situation in which property has been taken by the exercise of the power of eminent domain, but without any payment of compensation therefor having been made. The theory upon which such an action is brought is that since a taking, which is otherwise lawful, would be a violation of due process of law if done without compensation, it must be presumed that the taker intends to pay for the property condemned. See Peckwith v. Lavezzola, 1942, 50 Cal.App.2d 211, 122 P.2d 678, 682. If such is the nature of the instant action the water rights of the various parties must be de-

Before trial on the merits, plaintiffs joined in a motion for a preliminary injunction to prevent the cutting off of the flow of the San Joaquin River below Friant Dam. The defendant irrigation districts by their attorneys and the defendant bureau officials by an attorney designated by the Attorney General of the United States, filed motions to dismiss the action for failure to state a cause of action, and on the additional grounds that: This is in fact a suit against the United States; the United States is an indispensable party, and has not consented to be sued; further, that the Secretary of the Interior is an indispensable party over whom the court cannot obtain jurisdiction; and finally that there is a plain, speedy and adequate remedy at law.

The district court denied the motions to dismiss and in the course of its memorandum opinion declared that neither the United States nor the Secretary of the Interior were indispensable parties and in fact were not parties to the action. Thereafter, the case went forward without the appearance of the United States and the Secretary of the Interior upon the theory that the issue was whether or not the defendant bureau officials were unlawfully performing or refusing to perform acts for which they were individually, and not as agents of the sovereign, subject to mandatory or prohibitory injunction by the court. See United States v. Lee, 1882, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171; Williams v. Fanning, 1947, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95, and other cases cited by the district court as reported at 90 F.Supp. 773 at page 802.

The State of California intervened as a party plaintiff seeking to compel the defendants to release enough water from Friant Dam to preserve the fish resources in the San Joaquin River. Subsequently, the State abandoned its policy in regard to the fish upon the determination that the water was more beneficially useful for irrigation under the Central Valley Project.[11] On August 3, 1951, California filed an amended complaint in which it opposed the issuance of an injunction compelling the release of water from Friant, and in which it prayed for a "physical solution" and suggested that plaintiffs should in any event be relegated to monetary damages. And on October 16, 1951, pursuant to an order of the district court, California filed a pleading, apparently as a party defendant, denominated "Intervenor's Answer".

The City of Fresno and the Tranquility Irrigation District also intervened as parties-plaintiff.

Prior to the completion of the trial and before judgment the district court issued a temporary injunction ordering the defendant officials to release specified amounts of water from Friant Dam. In response to a petition made by the United States Attorney this court restrained the enforcement of the temporary injunction pending the return of an order to show cause why an extraordinary writ should not be issued, and after hearing this court declared that it would issue the appropriate writ unless the district court within ten days withdrew its temporary injunction. This court acted upon the ground that the United States was in possession and in claimed legal control of the waters of the San Joaquin in Millerton Lake behind Friant Dam; and that this court's appellate jurisdiction was threatened since the *res* of a potential appeal might be dissipated under the court's order.

termined since compensation is a monetary equivalent only for so much as has been taken.

We have here defined the term "inverse or reverse condemnation" only to clarify its use by plaintiffs in their complaint in Rank v. Krug. Whether the doctrine is applicable as the basis for an action against an otherwise immune sovereign which has not consented to be sued, and whether or not the United States has waived its sovereign immunity to a suit for "inverse or reverse condemnation" in the instant action, we do not decide.

11. See Opinion No. 50–89 of the Attorney General of California, 1951, 18 Ops.Cal. Atty.Gen. 31.

United States v. U. S. Dist. Court, 9 Cir. 1953, 206 F.2d 303. On August 12, 1953, the district court withdrew its temporary mandatory injunction.

In the meantime, on July 10, 1952, Congress enacted Title 43 U.S.C.A. § 666 granting consent to the joining of the United States in certain suits:

§ 666. "(a) Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: *Provided,* That no judgment for costs shall be entered against the United States in any such suit. * * *"

Rule 19(b) of the Federal Rules of Civil Procedure, Title 28 U.S.C.A. provides:

"When persons who are not indispensable, but who ought to be parties if complete relief is to be accorded between those already parties, have not been made parties and are subject to the jurisdiction of the court as to both service and process and venue and can be made parties without depriving the court of jurisdiction of the parties before it, the court shall order them summoned to appear in the action. * * *"

And Rule 21 of the Federal Rules of Civil Procedure, Title 28 U.S.C.A. provides:

" * * * Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. * * *"

Plaintiffs in Rank v. Krug, acting under authority of these provisions, moved to make the United States a party defendant. But it does not appear that any pleading directed to the United States has been filed. The district court granted the motion on September 18, 1953, after this court had rendered its opinion in the former mandamus action.

### Petition of the United States

The United States now asks us to issue an appropriate writ to annul the district court's order making the United States a party defendant in the case of Rank v. Krug. It urges us to exercise the power granted courts of appeal pursuant to Title 28 U.S.C.A. § 1651, for reasons which we summarize as follows: The order of the district court threatens our appellate jurisdiction in certain pending Tucker Act suits filed by, among others, certain parties plaintiff in Rank v. Krug seeking compensation for water rights taken by the United States; that during the 210 days of trial the theory of the case revolved around the attempt to enjoin certain officials of the United States Bureau of Reclamation and the United States was expressly and repeatedly declared by the presiding judge to be outside the case; the plaintiffs seek an injunction which is not proper in this case since there is a plain, speedy and adequate remedy at law under the Tucker Act; and in any event the United States has not consented in Title 43 U.S.C.A. § 666 to be enjoined.

The respondent court has moved that the petition for an extraordinary writ be dismissed.

▌ Whether or not the various issues raised would constitute reversible error if this case were before us upon

an appeal from a final judgment we cannot say. At this time the sole question is whether the circumstances warrant the exercise of the power of mandamus or prohibition. Such power may not be used to supervise all district court activity. It is an extraordinary power which is reserved for use in those rare instances when the appellate jurisdiction would be adversely affected unless action is taken by the appellate court. Whatever power may rest in the appellate court to interfere with the actions of the district court in attempting to act entirely outside the field of its prescribed jurisdiction or by wrongfully refusing to exercise its own authority [12] upon a matter within its jurisdiction, we have no occasion here to consider.

We were prepared to exercise our power to issue extraordinary writs at an earlier time in this case when our appellate jurisdiction was threatened by an imminent dissipation or destruction of the *res* of the case, namely, the waters of Millerton Lake.[13] At that time the district court's withdrawal of its order, made it unnecessary for us to act. In the instant situation no justification for the issuance of the writ of mandamus or prohibition in regard to the district court's order making the United States a party to the action of Rank v. Krug now pending before the district court, has been made manifest.

■ The suggestion that our potential appellate jurisdiction in the Tucker Act cases would be jeopardized by a decision in Rank v. Krug employs a strained argument. The plaintiffs in both cases are the same. Indeed, the Tucker Act cases were filed solely as an alternative remedy. And as for Tucker Act cases which might have been brought by persons other than the plaintiffs in Rank v. Krug, if there be such actions pending, our appellate jurisdiction is not offended, since such plaintiffs would still be compensated where there had been a taking of water which they were entitled to use.

■ The fact that 210 days have been spent in trial need not be considered a total loss because of the added party-defendant. Unquestionably, much statistical and expert engineering evidence already taken can be accepted as evidence in the case by the United States, not only because of the eminence and credibility of the witnesses, but because there is a close relationship between the issues appertaining to the bureau officials and the United States; and because a government attorney has been at the counsel table continuously representing the bureau officials. The United States as a named party may desire to add to testimony already taken and cross-examine the witnesses and these matters rightfully belong to the sound discretion of the trial court under the cooperation of able and earnest counsel. Realistically, if not technically, the basic issue that has consumed the 210 trial days has always been the claim of the plaintiffs that they have been and are being deprived by the government of the United States of the use of water to which they are legally entitled. In the beginning the case was envisioned as being much broader than a tort action against individuals, since the Secretary of the Interior and the Commissioner of the Bureau of Reclamation of the United States, among other United States government officials, were named parties defendant. We are not prepared to say that a very late order adding parties defendant may not in some circumstances affect our appellate powers, but we are prepared to say that our appellate action upon any decision in the instant case without the United States as a party would solve no basic issue involved and would be next to useless. Actually, our appellate powers over the real issue will be aided by the order of the trial judge as to which the United States is complaining. At any rate, the

12. Roche v. Evaporated Milk Ass'n, 1943, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185; Ex parte Republic of Peru, 1943, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014;

Bankers Life & Cas. Co. v. Holland, 1953, 346 U.S. 379, 383, 74 S.Ct. 145.

13. United States v. United States District Court, 9 Cir., 1953, 206 F.2d 303.

mere delay of the ultimate decision of the case does not constitute a proper base for our issuance of the extraordinary writ prayed for.[14]

■ The statement is made by petitioner that the United States cannot be enjoined and that the case of Rank v. Krug involves injunctive relief. But there are other types of relief prayed for[15] and there are parties-defendant other than the United States. If and when the district court construes §666 of Title 43 U.S.C.A. as authorizing injunctive relief against the sovereign and orders such relief, it will be in order for the United States to question the validity of such construction and order in any court having jurisdiction to entertain the question.

For the reasons hereinabove given we decline to issue either the writ of prohibition or the writ of mandamus petitioned for, and the motion of respondents that the petition be dismissed is hereby granted.

### Petition of the State of California

■ The State of California was granted the right to file, and has filed, in this court a petition for a writ of prohibition, mandamus or certiorari. By such petition California seeks a writ directing the district court to dismiss the actions of the City of Fresno and the Tranquility Irrigation District pending against the State. California further petitions that this court annul the order enjoining the United States as a party defendant in the case of Rank v. Krug, and requiring the State to sue the United States. The respondent court moves that the latter petition be dismissed.

California argues that as a sovereign state it is immune from suits to which it has not consented, and that it has not consented to be sued in the courts of the United States. It further alleges that there is no cause of action, in the referred-to actions, which arises under the laws of the United States, and that there is a lack of diversity of citizenship between the parties to such actions, and that there is no ancillary relationship between Rank v. Krug and any property in which the State claims an interest. The State also raises the question of exhaustion of administrative remedies and contends that the present posture of Rank v. Krug is radically different from the case in which the State intervened. The State urges that our appellate jurisdiction would be aided by issuing the requested extraordinary writ since it would permit of a more prompt appeal in Rank v. Krug and would prevent unnecessary appeals in the "*new* suits allowed or ordered to be brought by the Respondent Court" [italics ours].

The State of California voluntarily joined Rank v. Krug as a party plaintiff. In its complaint the State asked for a "physical solution" of the San Joaquin River water dispute. A "physical solution" cannot be effectuated without first determining the rights of the various interested parties. The district court acted within the scope of its competency in determining that it has jurisdiction over the State of California and that the State should be a party to Rank v. Krug in order that the court's adjudication of water rights should be complete. Whether or not that determination was erroneous may properly be raised only on appeal.[16] We do not agree with California's suggestion that the issuance of an extraordinary writ would aid our jurisdiction in Rank v. Krug. The petition for an extraordinary writ is dismissed.

14. Roche v. Evaporated Milk Ass'n, 1943, 319 U.S. 21, 31, 63 S.Ct. 938, 87 L.Ed. 1185; Ex parte Perry, 1880, 102 U.S. 183, 186, 26 L.Ed. 43; Bankers Life & Cas. Co. v. Holland, 1953, 346 U.S. 379, 383, 74 S.Ct. 145.

15. The relief prayed for in the complaint is an injunction or in the alternative a "physical solution" or in the alternative an "inverse or reverse condemnation".

16. Roche v. Evaporated Milk Co., 1943, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185; Cf. U. S. Alkali Export Ass'n v. United States, 1945, 325 U.S. 196, 204, 65 S.Ct. 1120, 89 L.Ed. 1554; 28 U.S. C.A. § 1291.

Petition of "Chowchilla" et al.
Water Districts

The Chowchilla, and certain other water and irrigation districts,[17] all of which are beneficiaries of the water impounded by the United States behind Friant Dam under contracts entered into between them and the United States, petitioned this court for writs of prohibition and mandamus. They ask us to prohibit the district court from proceeding further against them in Rank v. Krug and to direct the district court by writ of mandamus to dismiss the proceedings against them.

They urge as grounds for the granting of their petitions the district court's lack of jurisdiction based upon the following allegations: There is no diversity of citizenship between the plaintiffs, the City of Fresno, the Tranquility Irrigation District, and petitioners; there is no federal question; and there is no jurisdiction to grant an injunction because of plaintiffs' unreasonable delay, because the United States and its subordinate officials are proceeding under a valid statute, because there is an adequate remedy in damages at law, because an injunction would destroy property of the United States, and because the United States has undertaken to replace "in kind" water which it has taken.

They also join in the argument that the United States is not a proper party to the suit and should not be joined as a party defendant. And they conclude therefrom that if the United States is not a party, petitioners should not be subject to the district court's restraint because plaintiffs in Rank v. Krug cannot be granted indirectly relief to which they are not entitled directly. And they argue that the granting of their petitions would aid our appellate jurisdiction since we have the power to accelerate our reviewing authority under very exceptional circumstances. This last point is supported only by authority of a dissenting opinion.[18] Furthermore, the "very exceptional circumstances" urged are inconvenience and delay in the Central Valley Project. The Supreme Court of the United States has made it clear that inconvenience and delay are not sufficient grounds for the issuance of an extraordinary writ.[19] The respondent court asks that the petition for the issuance of an extraordinary writ be dismissed.

On the whole, the arguments of petitioners may or may not be valid defenses to the complaints in Rank v. Krug. And if properly raised those issues may be considered by us on appeal. But the questions here presented are not sufficient to invoke the exercise of our power to issue extraordinary writs.[20]

The petitions are dismissed.

---

17. See footnote 4 supra.

18. See dissent in Ex parte Republic of Peru, 1943, 318 U.S. 578, 591, 63 S.Ct. 793, 87 L.Ed. 1014.

19. Roche v. Evaporated Milk Co., 1943, 319 U.S. 21, 31, 63 S.Ct. 938, 87 L.Ed. 1185.

