[L. A. No. 3575. In Bank.—October 21, 1916.]

## W. E. CUMMINGS et al., Respondents, v. HOMER LAUGHLIN et al., Appellants.

DISPUTED BOUNDARY—PRESCRIPTION—EVIDENCE OF SURVEY AND MARKING OF BOUNDARY.—In an action between adjoining proprietors to determine the title to a disputed strip of land lying between their respective holdings, to which the plaintiff asserted title by prescription and by agreement settling a disputed boundary, evidence that the original owner of the entire land surveyed and marked what he conceived to be the boundary line between the tracts and designated such line as the boundary line at the time of the sale of one tract to the predecessor of the defendants, while inadmissible to vary by parol the terms of the deeds, was admissible as a part of the history of the agreement to treat this line as the true line of an uncertain boundary, and also to show the initial claim of right from which originated plaintiff's asserted prescriptive title.

ID.—ADVERSE POSSESSION—PAYMENT OF TAXES BY BOTH OWNER AND ADVERSE CLAIMANT.—A claimant to title to land by adverse possession, by paying the taxes assessed thereon for the period required to perfect a prescriptive title, fully complies with the law in that

CLXXIII Cal.—36

regard, even though the taxes have also been paid thereon by the holder of the record title.

ID.—EVIDENCE OF PRESCRIPTIVE TITLE.—The evidence in this case is held sufficient to show that the plaintiffs had acquired a prescriptive title to the strip of land in dispute.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

Lynn Helm, for Appellants.

Trask & Brown, Edgar K. Brown, and Everett L. Ball, for Respondents.

HENSHAW, J.—The question here presented is over the title to a disputed strip of land lying between the holdings of plaintiffs and defendants. Plaintiffs asserted title by prescription and by agreement settling a disputed boundary. The court's findings were in favor of the plaintiffs upon both propositions, against the answer and cross-complaint of defendants. Defendants appeal.

The following facts sufficiently present the controversy: In 1888 one Rogers was the owner of a tract of land containing, he thought, twenty-one acres (herein disregarding fractional acreage). It was known as lot 13 of the Lick tract. He caused a survey to be made, dividing this lot into a southerly ten acres and a northerly eleven acres. Surveyor's stakes indicated the boundary line and Rogers planted a row of fig trees along this line. In 1889 one O'Dea became the purchaser of the southerly ten acres by a deed calling for the southerly ten acres of lot 13, "said ten acres to extend back making the easterly and westerly lines equal distances from the center of Franklin avenue, and making it a rectangular piece." No controversy arises over the location of the center line of Franklin Avenue, nor of the easterly or westerly line of lot 13. This southerly ten acres, therefore, can be and has been accurately delimited upon the ground. So delimited upon the ground, the easterly and westerly lines extend 657.38 feet north of the center line of Franklin Avenue. But the line of the survey caused to

be made by Rogers, which line, as has been said, was marked upon the ground by stakes and by a row of fig trees, was 19.41 feet south of the true line, and only 637.97 feet northerly from the center line of Franklin Avenue. Thereafter Rogers sold all of the rest of this lot 13, that is to say, all of the northerly portion of it, to one Stephens, by a deed of date October 4, 1892, which deed conveyed "the north eleven acres of lot 13, the south line thereof being parallel with the south line of lot 13 of the western subdivision of the Lick Tract." The difficulty seemingly arises over a shortage in the acreage of lot 13. If the southerly proprietor is given ten acres, the northerly proprietor does not get his eleven acres, and, conversely, if the northerly proprietor is given his eleven acres, the southerly proprietor does not get his ten acres, and hence this controversy over the strip nineteen feet wide and 662.64 feet long.

Subsequently, touching title to the northern piece, Stephens, the husband, held title until January, 1898, when he conveyed to his wife the land as "the north eleven acres of lot 13," etc. Mrs. Stephens held title until 1902, when she conveyed the land to these plaintiffs by deed containing the same description. Touching title to the southerly ten acres, O'Dea and his successors in interest owned the land from 1889 until 1900, when the land was conveyed to Homer Laughlin, against whom this action was brought, and the representatives of whom are the appellants herein. The transfers of title were by descriptions identical with that contained in O'Dea's deed. In 1902 Homer Laughlin caused a survey of his ten acres to be made, which survey showed his northerly line to be 657.38 feet north of the center line of Franklin Avenue. He asserted ownership to that line and this action followed.

The court admitted the evidence of Rogers, the common source of title, and of O'Dea, his grantee to the southerly ten acres. Rogers testified to the survey which he had caused to be made, to the marking of the northerly boundary line of what he conceived to be the southerly ten acres by stakes, his planting a row of fig trees along this line, and, further, that when he came to sell this southerly ten acres, before the execution of his deed he took O'Dea upon the land and showed him these stakes and the line of fig trees as marking the northern boundary of the tract which O'Dea proposed

to purchase. O'Dea's testimony corroborates this. He says that he paid no particular attention to the boundary line shown him, being more interested in other matters pertaining to the land, but that after he purchased it he did recognize the line as being his northern boundary line, and in turn pointed it out to his grantees as the northern boundary line. Objection is made to the introduction of this evidence, as being an effort to vary by parol the terms of the deed of grant. For such a purpose, of course, the evidence was inadmissible, there being no effort here made to reform the deed for fraud or mistake. But the evidence was admissible, and was properly admitted as a part of the history of the agreement to treat this line as the true line of an uncertain boundary, and as well to show the initial claim of right from which originated plaintiff's asserted prescriptive title. The evidence further shows that continuously and uninterruptedly the Stephens and their successors—the Cummings—exercised all the necessary acts of dominion, ownership, and control over the land under open and notorious claim of right, and maintained an adverse possession to this strip of land against O'Dea and his successors. This, from the nature of the case, was to be expected, since O'Dea and his successors unquestionably accepted this line as being their true northern boundary, and consequently made no opposition nor protest against the continuous acts of dominion which plaintiffs and their predecessors exercised over the now disputed strip.

Much of the briefs is devoted to an attack and defense of the finding of the court to the effect that the boundary line was uncertain and had been fixed by agreement, evidenced by long acquiescence. Into the consideration of this question we need not enter, because apart from it the judgment of the court is fully sustained upon its further finding of title by prescription. We have said that the occupancy and dominion of plaintiffs and their predecessors, as found by the court and as sustained by the evidence, were quite sufficient to fulfill the requirements of the law. There is left for consideration the one question peculiar to our law—the payment of taxes by the adverse claimant for the period required to perfect a prescriptive title. The difficulty, as has been intimated, arose over the fact, as found by the court, that lot 13 did not contain the requisite and supposed quan-

tity of land to give to the holder of the southern ten acres and of the northerly eleven acres each his full quantity. Giving to the deeds, therefore, the land that each called for resulted in an overlap. The taxes imposed upon the owners of the northern piece were taxes upon eleven acres. In like manner the taxes imposed upon the owners of the southern piece were taxes upon ten acres. These taxes were duly and regularly paid by the owners. The result was a double taxation and a double payment of taxes upon the disputed strip. Under such circumstances the claimant to title by adverse possession has fully complied with the law when he has paid the taxes upon the land, even though they have also been paid by the holder of the record title thereto. (*Cavanaugh* v. *Jackson*, 99 Cal. 672, [34 Pac. 509]; *Owsley* v. *Matson*, 156 Cal. 401, [104 Pac. 983].)

The judgment and order appealed from are therefore affirmed.

Shaw, J., Sloss, J., Lorigan, J., Lawlor, J., Melvin, J., and Angellotti, C. J., concurred.

Rehearing denied.