[Civ. No. 2752.    Third Appellate District.—October 7, 1924.]

## PEREIRA FARMS CORPORATION (a Corporation), Respondent, v. E. T. SIMAS et al., Appellants.

[1] QUIETING TITLE—PAYMENT OF TAXES—EVIDENCE.—In this action to quiet title, while the evidence as to the payment of taxes upon the lands in question might well have been made more certain as to the persons by whom such taxes were actually paid, sufficient evidence appeared to justify the inference that the same were paid by or on behalf of the plaintiff and its predecessors in interest.

[2] ID.—DOUBLE PAYMENT OF TAXES—COMPLIANCE WITH STATUTE—ADVERSE TITLE.—Where the adverse occupant of land causes it to be assessed to himself, and he pays the taxes levied thereon, he complies with the provision of section 325 of the Code of Civil Procedure, even though the true owner pays a double or second tax thereon for the same years.

[3] ID.—CONVEYANCE OF PROPERTY—SUBSTITUTION OF PARTIES.—Where during the pendency of an action to quiet title the original plaintiff transfers the property described in the complaint to another, on motion of counsel for plaintiff the trial court properly permits the grantee to be substituted for the original plaintiff.

[4] ID.—PLEADING — DESCRIPTION OF PROPERTY — CERTAINTY.—In an action to quiet title to real property, where the boundary lines of the land in dispute which are described in the complaint are set out by courses and distances, commencing at a given corner of a designated section, and there is no uncertainty as to the location of that particular corner, and the description does not appear to be insufficient or indefinite, a demurrer on the ground that the description of the land is indefinite and uncertain, in that it cannot be told from the complaint what land is claimed by plaintiff, is properly overruled.

[5] ID.—INCOMPLETE DETERMINATION OF ISSUES—EVIDENCE.—In an action to quiet title to certain real property, where the defendants file a cross-complaint to quiet title in them to a portion of the property, it is error to find for plaintiff as to a portion of the property in dispute, and fail to determine the rights of the parties to the remainder thereof, where the undisputed evidence shows that as to such remainder of the property there is not the slightest merit in plaintiff's claim of title thereto.

1.  See 1 Cal. Jur. 627.
2.  See 1 R. C. L. 699; 1 Cal. Jur. 566.
3.  See 20 R. C. L. 697; 20 Cal. Jur. 548.

[6]  Id.—Evidence—Findings—Judgment—Appeal—Retrial of Particular Issue.—Upon appeal from the judgment in such case, although the undisputed evidence shows that as to such remainder of the property there is not the slightest merit in plaintiff's claim of title thereto, where there is no finding upon that issue, the appellate court cannot so modify the judgment as to determine it, but must send the case back for a retrial of that particular issue.

(1) 2 C. J., p. 276, sec. 621.    (2) 2 C. J., p. 208, sec. 431.    (3) 1 C. J., p. 151, sec. 241.    (4) 32 Cyc., p. 1355.    (5) 32 Cyc., p. 1382.    (6) 4 C. J., p. 1151, sec. 3158, p. 1194, sec. 3234.

APPEAL from a judgment of the Superior Court of Siskiyou County.    C. J. Luttrell, Judge.    Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

B. K. Collier and J. P. McNamara for Appellants.

Tapscott & Tapscott and Taylor & Tebbe for Respondent.

THE COURT.—The defendants have appealed from the judgment herein quieting plaintiff's title to certain lands described in the complaint.

The complaint alleges that the plaintiff is the owner of a "portion of lot 1 and all of lots 2 and 3 and portion of the south ½ of northwest ¼, all in section 33, township 44 north, range 8 west, Mount Diablo Base and Meridian," particularly describing such lands, as well as other lands not in controversy here, and prays for judgment quieting plaintiff's title thereto.    Defendants denied the foregoing allegation of the complaint and, for cross-complaint, alleged that defendants are the owners of the south half of the northwest quarter and lots 1 and 2 of said section 33, containing 90.40 acres, and prayed for judgment quieting their title thereto.    Plaintiff answered the cross-complaint, denying defendants' title to the lands therein described, and alleging that plaintiff is the owner of the whole thereof. Of the lands so in controversy, the judgment quiets plaintiff's title to about 25 acres but is silent as to the remainder.

In 1856 C. C. Tracy, a deputy United States surveyor, surveyed a tract of land in said township 44 three miles in length from east to west and one-half mile in width, which he described as the north halves of sections 31, 32, and 33. The survey was approved by the United States government. In 1880 W. F. Benson, a deputy United States surveyor, surveyed the whole of the township. The Benson survey was also duly approved. The section and subdivision boundary lines of the Tracy survey are a quarter of a mile farther east and more than a quarter of a mile farther north than the corresponding lines of the Benson survey, so that the south half of the northwest quarter of section 33 of the Benson survey lies south of the southeast quarter of the northwest quarter and the southwest quarter of the northeast quarter of section 33 of the Tracy survey and is separated therefrom by a narrow strip of land designated in the Benson survey as lots 1 and 2, each lot containing 5.20 acres.

Defendants' claim of title is based upon a patent from the United States to Manuel Soiza, dated October 1, 1903, and a deed from Soiza to defendant Manuel G. Simas, dated December 30, 1907, both instruments describing the lands therein conveyed as "the south half of the northwest quarter and the lots numbered one and two of section thirty-three in township forty-four north of range eight west, Mount Diablo Meridian in California, containing ninety acres and forty-hundredths of an acre." The plaintiff failed to prove a complete record title, but proved without contradiction that it and its predecessors in interest had been in the actual, exclusive, and adverse possession of the lands described in the complaint continuously for more than twenty years, under a claim of ownership thereof, and the court so found. The court also found that the plaintiff and its predecessors in interest had paid all taxes levied and assessed against the property "during the period of more than five years continuously next prior to the filing of this complaint." If the evidence supports the finding as to the payment of taxes, the judgment quieting plaintiff's title must be affirmed.

[1] John Pashburg, tax collector of the county at all times since 1907, testified that for more than five years

prior to the commencement of the action "lot 1 and 2 and the fractional south half of the northwest quarter of section 33, township 44 north, range 8 west," had been assessed to plaintiff and its predecessors in interest and all taxes thereon paid. The evidence does not show whether the witness referred to section 33 of the Tracy survey or that of the Benson survey but, since there were no lots 1 and 2 in the Tracy survey, it must be inferred that the land was assessed in accordance with the descriptions contained in the Benson survey. Counsel for defendants cross-examined the witness as follows: "Q. . . . Do you know who paid the taxes that were referred to by you as having been paid, in your direct examination? A. The Pereiras Company and Pereiras paid the taxes, I think. . . . I mean E. W. Pereira and Manuel Pereira and some of the assessments were to the Pereira Farms Company. Q. In 1917? A. No, I say different years. Q. Well, but I am confining my question now to 1917. A. It was assessed to Manuel Pereira. Q. Well, do you know who actually paid the taxes? A. The Pereira people. Q. Do you know what individual paid the taxes? A. Well, Mort Beem of the Carlock Banking Company. Q. Then of your own knowledge, you don't know which one of the Pereiras actually put up the money. As I understand you, what you do know is that the land that you refer to here was assessed to the parties that you refer to and those taxes are paid? A. Yes, sir. Q. Now, as to who paid them, you don't undertake to testify to? A. No. . . . It is the custom of the Fort Jones Banking Company to pay all the assessments for Scott Valley people. . . . Has been ever since I have been in office." The parties to the action are Scott Valley people. Defendants made no attempt to show that the foregoing taxes were paid by any person other than the Pereiras. While the evidence might well have been made more certain as to the persons by whom such taxes were actually paid, sufficient appears to justify the inference that the same were paid by or on behalf of the plaintiff and its predecessors in interest.

The evidence shows that the fractional south half of the northwest quarter of section 33 was assessed to defendant Manuel G. Simas, and all taxes paid, during the same years that the foregoing assessments were made to plaintiff and its

predecessors. It does not appear, except by inference from the facts stated, by whom the payments were made. This appeal has been argued on the theory of a double assessment of the lands in controversy and a double payment of taxes thereon. Appellants contend that under such a state of facts title by adverse possession is not established. The present state of the decisions upon the question is well stated in 1 California Jurisprudence, 566, as follows:

[2] "Whether the adverse occupant of land may have it assessed to himself while it is assessed also to the true owner, and may comply with section 325 of the Code of Civil Procedure, by paying this double or second tax when for the same years the true owner also pays the tax, is a question which has been attended with no little confusion in the authorities. It seems now to be definitely settled that where there is a double taxation and a double payment of taxes upon the land, the claimant to title by adverse possession has fully ' complied with the law when he has paid the taxes upon the land, even though they have also been paid by the holder of the record title thereto. On this point the supreme court has said: 'Having had the land assessed to him, and having paid the taxes levied thereon, we think he has fulfilled the conditions of the statute, and it is immaterial as to the number of times the land may have been assessed to and the taxes paid by other parties.' A contrary rule in certain of the authorities is to the effect that where the true owner pays the tax upon an assessment to himself before the adverse claimant pays the second or double tax he has caused to be assessed to himself, the latter cannot claim compliance with the statute. However, the reasoning of the majority opinion in *Cavanaugh* v. *Jackson,* 99 Cal. 672 [34 Pac. 509], has been later approved by the supreme court and now stands as authority."

The following cases, cited in the footnotes, fully support the text: *Cavanaugh* v. *Jackson,* 99 Cal. 672 [34 Pac. 509]; *Carpenter* v. *Lewis,* 119 Cal. 18 [50 Pac. 925], *Owsley* v. *Matson,* 156 Cal. 401 [104 Pac. 983], *Cummings* v. *Laughlin,* 173 Cal. 561 [160 Pac. 833], and opinion on denial of a hearing by the supreme court in *Van Calbargh* v. *Easton,* 32 Cal. App. 796, 800 [164 Pac. 1113]. Under the authori-

ties cited, the plaintiff established title by adverse possession to the lands in question.

[3] E. W. Pereira was the original plaintiff in the action. During the pendency thereof Pereira transferred the property described in the complaint to the Pereira Farms Corporation. On motion of counsel for plaintiff the court permitted the corporation to be substituted for the original plaintiff. There was no error in this. Section 385 of the Code of Civil Procedure provides that upon such a transfer of interest by a plaintiff "the action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding."

[4] It is urged that defendants' demurrer to the complaint should have been sustained, on the ground that "the description of the land was indefinite and uncertain in that it could not be told therefrom what land was claimed by plaintiff." The boundary lines of the land in dispute which are described in the complaint are set out by courses and distances, commencing at the northeast corner of section 27. There is no uncertainty as to the location of that particular corner and it does not appear wherein the description of the disputed lands is insufficient or indefinite.

[5] As stated, the court gave judgment quieting plaintiff's title to about 25 acres of the 90.40 acres of land in dispute but did not determine the rights of the parties in the remainder. The defendants were entitled to a judgment quieting their title to such remainder of the 90.40 acres of land. In their answer to the cross-complaint the plaintiff denied defendants' title to any part of the 90.40 acres claimed by the latter and alleged that plaintiff was the owner of the whole thereof. At the beginning of the trial counsel for plaintiff said: "We will adhere to everything we have stated . . . by the answer to the cross-complaint." The uncontradicted evidence shows that there is not the slightest merit in plaintiff's claim of title to any part of the ninety-acre tract except the aforesaid 25 acres. Doubtless it was through inadvertence that the court failed to give defendants judgment quieting their title to the remainder of the tract.

[6] Since no finding was made upon that issue, it is beyond the power of this court to so modify the judgment as to

determine it.   It is therefore necessary to send the case back for a retrial of that particular issue, but it is not necessary to reverse the whole judgment.

In so far as it fails to adjudicate the rights of the parties in and to the aforesaid remainder of the lands described in the cross-complaint the judgment is reversed, with directions to the trial court to retry and determine such rights.   In all other respects the judgment is affirmed, appellants to recover their costs on appeal.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 5, 1924.