[Civ. No. 6819. Third Dist. Apr. 9, 1943.]

MARY ALICE CHURCHILL, Respondent, v. MRS. OSCAR F. KELLSTROM et al., Defendants; SOUTHERN PACIFIC RAILROAD COMPANY (a Corporation) et al., Appellants.

Paul V. DeFord for Appellants.

King & King and Percy King, Jr., for Respondent.

PEEK, J.—The defendants Southern Pacific Railroad Company and Southern Pacific Company, hereinafter refer-

red to as the Southern Pacific, appeal from certain portions of the judgment quieting plaintiff's title to a small parcel of land 53 feet wide by 285 feet long adjoining the Southern Pacific Oakville station premises. The defendants, other than the appellants herein, did not contest the action. ▮ The only issue is the title to said parcel. Appellant specifically attacks that portion of the judgment wherein plaintiff's title is quieted subject to the appellants' public use thereof; that appellants have not been in adverse possession for any period of more than one year; that appellant is liable to plaintiff for damages for trespassing thereon, and that defendants should compensate plaintiff for such use, and in the words of the trial court "may, upon issues being made and tried, be compelled so to do."

Both the plaintiff and defendants claim title under a common grantor, the To-Kalon Vineyard Company. The Vineyard Company by deed dated December 19, 1906 and recorded in the office of the County Recorder of Napa County on December 20, 1906, conveyed to the San Francisco, Vallejo & Napa Valley Railroad Company, "a right of way for the purpose of a railroad to be operated by electricity or other motive power *except steam,* over, along and upon and across" a portion of the Caymus Rancho, including the lot in controversy. This deed further contained a condition subsequent requiring the grantee to construct its line within two years after the date of the deed, and to continuously operate said road with electricity or other motive power, except steam, and also provided that in case of failure to observe and perform all or any of the conditions or upon abandonment of said road or the operation of the same, the said right of way would "revert" to the grantor. Thereafter by a deed dated October 10, 1917, and recorded in the office of the County Recorder in Napa County on February 6, 1918, the San Francisco, Napa & Calistoga Railway, successors in interest to the San Francisco, Vallejo & Napa Railroad Company, the grantee in the deed heretofore referred to, purported to convey the fee title to the lot in controversy to the defendant Southern Pacific Railroad Company, lessor of the defendant Southern Pacific Company. By a deed dated November 27, 1918, and recorded December 20, 1918, in the office of the County Recorder of Napa County, the Vineyard Company conveyed said ranch to the plaintiff, the description in said deed included the lot in controversy. Plaintiff's complaint is in the

usual form of a suit to quiet title, alleging that the plaintiff is the owner in fee of the ranch; that she has been in adverse possession for twenty years, claiming to own in fee, and has paid all taxes on the ranch during the five years continuously next preceding the filing of the complaint. The Southern Pacific alleges that it was and for a period of more than five years continuously before the commencement of the action had been in adverse possession and ownership of said lot, claiming under color of title, using it for a public use and purpose connected with and necessary to the maintenance of a railroad for the transportation of freight and passengers, and had paid all of the taxes thereon during such period.

The record discloses that the lot in controversy is an uncultivated partly fenced strip adjoining defendants' station, and has been used by appellants' freight customers as a place to turn their trucks and other vehicles and as a means of access to the depot and loading platforms. The further testimony of the Southern Pacific was that the lot had been oiled and graded, presumably to assist in the movements of the trucks, and that a small structure had been built a short distance from the station. There is also evidence that the lot was included as part of defendants' operative property for the purpose of taxation although the plaintiff testified that she had paid all of the taxes levied against the ranch property. We do not feel it necessary to determine the correctness of any assessments or payments of taxes made herein, for there is ample evidence of payment by both parties. ■ However, if the property were properly a part of the measure of defendants' gross receipts tax it was exempt from further taxation (*Central Mfg. Dist. Inc.* v. *State Board of Equalization,* 214 Cal. 288, 294 [5 P.2d 424]; *Morgan Adams Inc.* v. *County of Los Angeles,* 209 Cal. 696 [289 P. 811] ) and plaintiff's payment of county or other taxes would be immaterial. (*Owsley* v. *Matson,* 156 Cal. 401 [104 P. 983]; *Cummings* v. *Laughlin,* 173 Cal. 561, 562 [160 P. 833]; *Pereira Farms Corp.* v. *Simas,* 69 Cal.App. 159 [230 P. 976], 132 A.L.R. 238n.)

■ Unfortunately the record is devoid of any substantial evidence from which it can be ascertained whether or not the condition subsequent contained in the deed of December 19, 1906, occurred. That is, if or when there was a failure to operate trains over said right of way by means other than steam. We have been able to find only a casual mention of

the date of abandonment in the record, once by the daughter of plaintiff who, in reply to a question if she had ever heard of the claim of the Southern Pacific to the lot, said in part, ''with the clause thereto attached that if it were abandoned it would revert to Mrs. Churchill.'' A second mention is found in the statement of plaintiff's counsel in reply to a statement by defendant's counsel after he rested his case. ''It has been only about a year ago.'' By virtue of the statements of the court both during and immediately after the conclusion of the trial and in fact the actual findings of the court, there is a strong implication that the question of forfeiture under the covenant contained in the 1906 deed was prominent in the eyes of the court. Both in law and in equity forfeitures are abhorred but by the same token waivers are favored. It would seem, therefore, that for a proper determination of such fundamental questions evidence more substantial than the statement of counsel and the observation by plaintiff's daughter that the deed contained a reversionary clause would be necessary. Particularly is this true when more than twenty years have elapsed since the date of the defendants' deed and the filing of the plaintiff's complaint.

Also it is difficult to understand by what evidence or by what means the court reached the conclusion it did that plaintiff and her predecessors had been in ''actual, exclusive and adverse possession of said lot for more than 20 years and had paid all taxes of every kind.'' It may have resolved the very casual conflict in the evidence as to the extent of defendants' use of the premises in favor of the plaintiff or may have concluded that any use by the defendants for a period in excess of one year was merely permissive, but if it were the latter it is difficult to reconcile such a conclusion with the direct testimony of the plaintiff, who stated she knew nothing of the use by the Southern Pacific of the lot in controversy.

There is ample evidence to support the finding that the Southern Pacific has devoted the property to a public use, and that such use is necessary and incidental to its shipping service and facilitated the loading and unloading of freight. Therefore, it properly was held to be within the well established rule that where property has been devoted to use incidental and necessary to the public good it becomes vested in the utility. In this instance the use of space adjacent to the station for the turning and backing of large trucks loaded with grapes would be no different from the use of space simi-

larly located for the loading of cattle. (*Hill* v. *Barner,* 8 Cal. App. 58 [96 P. 111].) However, an owner cannot be precluded unless a substantial public use is involved. (*Stone* v. *Cordua Irr. Dist.,* 72 Cal.App. 331 [237 P. 554].) But the fact that the owner permitted such use does not give the utility a title or a right of way or estop her from maintaining an action for damages.

As this court recently said in the case of *Peckwith* v. *Lavezzola,* 50 Cal.App. 2d 211 [122 P.2d 678] :

When property ''is appropriated and used for the benefit of the public for a considerable period of time, with full knowledge on the part of the owner, he may be estopped from interfering with such vested public use by means of injunction, ejectment or a suit to quiet title. Under such circumstances, his remedy will be confined to a mere right to recoup adequate damages to compensate him for the loss of his property on account of such appropriation. This remedy is based on the theory that although the intervening public rights prevent interference with the use and control of the property on the part of the owner, he is, nevertheless, entitled to compensation on the principle applicable to a proceeding in reverse condemnation. Private property may not be taken, even for the benefit of the public, without just compensation. That principle has been frequently announced by the decisions of our courts. (*Gurnsey* v. *Northern Cal. Power Co.,* 160 Cal. 699 [117 P. 906, 36 L.R.A. N.S. 185] ; *Collier* v. *Merced Irr. Dist.,* 213 Cal. 554, 563 [2 P. 2d 790] *Peabody* v. *City of Vallejo,* 2 Cal. 2d 351, 377 [40 P. 2d 486] ; *Hillside Water Co.* v. *Los Angeles,* 10 Cal. 2d 677, 688 [76 P. 2d 681].) ''

 At the conclusion of the trial, counsel for both parties agreed that the trial judge might view the premises. Knowledge of facts secured by a judge or jury in viewing premises may be presumed on appeal in support of findings or a judgment. However, because of the facts surrounding the present controversy it is difficult to comprehend how it would come within the general rule.

Other than as regards the question of public use to which the property had been put by the Southern Pacific, an inspection of the premises would assist the examiner little, if any. Such other impressions which the court might have gained are not a part of the record before us and we should not speculate in regard to the effect thereof.

 Because of a further lack of evidence to substantiate the court's finding that the Southern Pacific had not been in possession of the lot in controversy adversely to the plaintiff "for a period of five years, or for a period more than one year continuously before the commencement of this action, and it is not true that said defendants have paid all of the taxes which have been levied and/or assessed upon said parcel of land at any time prior to the commencement of this action," we are unable to agree with the judgment of the court.

 If the public interest prohibits the plaintiff from asserting her title to the lot in controversy because of a public service to which the property has been put under color of title by the defendant Southern Pacific, a court of equity should award her just compensation for the appropriation of her property on the theory of reversed condemnation (*Peckwith* v. *Lavezzola*, 50 Cal. App. 2d 211, 218 [122 P.2d 678]) unless her right thereto is barred by the statute of limitations (*Robinson* v. *Southern California Ry. Co.*, 129 Cal. 8 [61 P. 947]; *Williams* v. *Southern Pacific R. Co.*, 150 Cal. 624, 626 [89 P. 599]; *Southern Pacific R. Co.* v. *Los Angeles Mill. Co.*, 177 Cal. 395, 403 [170 P. 829] ) or she has waived her right or may be deemed guilty of laches in asserting same. (*Collier* v. *Merced Irr. Dist.*, 213 Cal. 554, 563 [2 P.2d 790].)

Upon a new trial of this cause, if the court should find upon substantial evidence that the claim of adverse possession of the property by the Southern Pacific under color of title is not well founded, but should find that the plaintiff is not entitled to a decree quieting title to the lot in controversy because it has been appropriated for a public use, then the court should determine whether or not the plaintiff has an existing and valid claim for damages (subject to the qualifications previously mentioned) as just compensation for the value of the property thus appropriated and used for the public benefit.

This being a suit in equity it is inequitable to deprive the plaintiff of her property even though it be taken for public use without awarding her just compensation unless by inaction in asserting her rights, she has precluded herself from obtaining such relief. Such damages can be awarded in an equitable action to quiet title under the general prayer contained in plaintiff's complaint "and that such other and general relief be granted as to the court may seem meet and agreeable to equity."

However, should the court find upon a new trial that defendants' use of the property has ripened into a valid claim to the property by adverse possession, findings and judgment should be entered accordingly.

The judgment is reversed, and a new trial is ordered in conformance with this order.

Thompson, J., and Adams, P. J., concurred.