[Civ. No. 7049. Third Dist. Aug. 19, 1944.]

MICHAEL W. KENDRICK, Respondent, v. LOUIS KLEIN et al., Appellants.

James Snell for Appellants.

Frank G. Finnegan and H. Ward Sheldon for Respondent.

ADAMS, P. J.—Plaintiff, Michael W. Kendrick, on September 24, 1942, filed this action seeking to quiet his title to a tract of land consisting of 1.72 acres, described by metes and bounds, and constituting a part of the southeast quarter of the northeast quarter of the northeast quarter (SE¼ of NE¼ of NE¼ of Section 15, T. 16 N., R. 8 E., M.D.B. & M.

Defendants Louis Klein and Anton C. M. Larsen, answering plaintiff's complaint, denied plaintiff's ownership, and set up title in themselves.

The cause was tried by the court sitting without a jury, and resulted in findings and a judgment in favor of plaintiff. A motion for a new trial was denied.

Plaintiff's claim of ownership is based upon adverse possession, and on this appeal it is contended by appellants that the findings of the trial court in favor of plaintiff are not sustained by the evidence; that there is no evidence proving or tending to prove that plaintiff's possession of the property was hostile to the true owners, that it was exclusive, that it was under claim of title or that plaintiff and his predecessors had paid all taxes levied or assessed against said lands or that no taxes were levied or assessed against said lands.

The property in controversy is located in the northern half of the SE¼ of the NE¼ of the NE¼ of Section 15, T. 16 N., R. 8 E., M.D.B. & M. The evidence shows without conflict that as early as 1871 a farm which includes the disputed area was occupied by James Kendrick and Alice Kendrick, his wife, who were the father and mother of plaintiff, Michael W. Kendrick; that plaintiff was born on the property in 1871, and during his whole lifetime lived in the house of his parents, a portion of which house extends into the area in controversy; that the contested area was, during all of said time, enclosed by a substantial fence which was always kept in repair; and that the said area was each year cultivated for a garden. James Kendrick, during his lifetime, claimed the property as his own, and in July, 1892, he and his wife executed and recorded a declaration of homestead upon a tract which included the area in controversy, alleging that they resided on said premises and claimed them as a homestead, and that same were community property.

After the death of James Kendrick, his wife, Alice, and her son, plaintiff herein, continued to reside on the property, and on September 12, 1907, Alice Kendrick executed a deed of said premises to plaintiff, which deed was recorded on August 3, 1912. She died some eighteen or twenty years prior to the trial, and thereafter plaintiff continued to reside upon the land. Since 1915, at least, plaintiff has paid taxes assessed against the property each year, the tax bills describing certain land not in controversy but including the portion of the SE¼ of the NE¼ of the NE¼ lying north of the north bank of Deer Creek. Deer Creek, as shown by the map in evidence, crosses the said SE¼ of the NE¼ of the NE¼ from east to west near the center of same, and the disputed tract lies within the area described in the tax bills as aforesaid.

Plaintiff testified that he had claimed to own the property ever since his mother's death, that he had continuously resided thereon, that no one ever questioned his ownership or attempted to interfere with his possession; that for fifteen years or more he had maintained at each gate to his premises signs 12″ x 24″ in size, printed in large letters, reading: "Private Property, permission to pass over revocable at any time." Plaintiff's testimony was corroborated by his nephew, Eldon Kendrick, who testified that he had been familiar with the

property since 1915, that it was then fenced, and that there had always been a garden on it and feed for cows. Thomas Coan, who had been familiar with the property for sixty-five years, said the fences were there over sixty years before the trial, and in the same position, and that the disputed area was always cultivated in the summer time.

Defendants, in support of their claim of title, introduced in evidence a notice of placer location made and recorded by three men named Gray, Clancy and Garver in 1885, covering, among other lands, the SE¼ of the N—¼ of the NE¼ of Section 15, T. 16 N., R. 8 E., M.D.B. & M.; a deed by the above named locators to E. S. Hawke on the same day that the location notice was recorded; a mineral certificate from the United States to Ellen S. Hawke, dated May 5, 1887, and recorded October 20, 1890; a deed from Ellen S. Hawke to James Hawke and Albert Hawke, dated April 27, 1891, and a deed by Albert Hawke to Louis Klein dated December 26, 1916, purporting to convey an undivided one-half interest in the property. However, they also introduced a decree of foreclosure of mortgage made and entered October 28, 1919, in favor of one Ora D. Larsen, which foreclosed all interest of James Hawke, Louis Klein, and others; a sheriff's certificate of sale of said property to Ora D. Larsen dated November 18, 1919, and a sheriff's deed to her dated January 14, 1921. A deed by Ora D. Larsen to Anton C. M. Larsen, dated February 26, 1941, was also filed.

Continuous occupation of the property by plaintiff and his parents before him is not denied by the defendants, nor is it denied that the portion in controversy was fenced and cultivated as testified by plaintiff. Defendants do not deny knowledge of the occupancy of the land by plaintiff and his parents before him, nor the fact that it was fenced and cultivated; and it is admitted by them that such occupancy was not disputed by them nor was rental or other compensation for use of the premises ever demanded. And as showing that plaintiff's possession was hostile there was testimony by plaintiff that at one time he had a dispute with James Hawke when the latter sought to pass over the land, at which time he hit Hawke over the head with a shovel, and thus deterred him from entering. Appellants contend, however, that the possession of plaintiff and his parents before him was not hostile

to the true owners nor exclusive because, about 1915, the brother of defendant Klein built a rough board shed about 10 feet within plaintiff's fence, which shed was at one time used to stable a horse, and thereafter used to store tools which were being used in dredging operations on the land south of plaintiff's fence. Plaintiff stated that this shed was built without his knowledge, but that on discovering it he made objection and asked James Hawke why he had put it inside the fence; that Hawke said he wanted to store some machinery in it, which would be safer if inside the fence; that he (plaintiff) told Hawke that "it was all right, but we owned the ground." He also testified that he had objected to the use of the shed for a horse, whereupon the horse was moved across the creek.

But appellants argue that plaintiff's occupancy was not exclusive, also that he did not pay *all* of the taxes because defendants also paid taxes assessed against the whole of the SE¼ of the NE¼ of the NE¼ of the section. ▮ Whether the construction and use of the shed was sufficient to show that plaintiff's occupancy was not exclusive or whether the maintenance of such shed was with the permission of plaintiff, was a question of fact for the trial court whose conclusion is binding upon an appellate court. ▮ The mere fact that the shed was built upon the disputed area many years prior to the trial and put to the use shown by the evidence, was not, in itself, sufficient to interrupt plaintiff's possession. ▮ As stated in volume I, American Jurisprudence, section 177, page 890, referring to the interruption of the possession of an adverse possessor:

"The mere act of going upon the land is not enough. The owner must assert his claim to the land, or perform some act that would reinstate him in possession, before he can regain what he has lost. It is evident, therefore, that an entry by stealth, under circumstances going to show that he claimed no right to enter, or an entry for purposes other than those connected with a right to enter, would not break the continuity of the disseisor's possession."

▮ In *Smith* v. *Southern Pacific R. R. Co.*, 1 Cal.2d 272, 275 [34 P.2d 713], the court said that to interrupt the adverse user the reentry of the legal title holder must be open, notorious and under claim of right and must equal in dignity and character that required to initiate an adverse possession;

citing *Armstrong* v. *Payne,* 188 Cal. 585, 597 [206 P. 638]. No particular use of the shed appears to have been made during recent years, nor has anything of real value been stored therein, and there was testimony that boards had been pulled off its walls, and that it was so broken down that one could walk in without going through the door. No use of same by Ora D. Larsen during the time she held the legal title—from 1919 to 1941—was shown. The trial court may well have concluded that its use had been abandoned.

■ As to appellants' argument that plaintiff did not pay *all* of the taxes assessed against the property because it was included within the description of an area upon which defendants also paid taxes, the fact that the property may have been doubly assessed by the public authorities cannot serve to destroy plaintiff's adverse possession. In *Cavanaugh* v. *Jackson,* 99 Cal. 672 [34 P. 509], the court said that where a claimant by adverse possession had the land assessed to him and paid the taxes levied thereon it was immaterial that it had also been assessed to and the taxes paid by others; that it was never intended by the lawmaking power that such claimant should pay taxes for any stated year more than once. (Also see *Owsley* v. *Matson,* 156 Cal. 401, 406-407 [104 P. 983] ; *Cummings* v. *Laughlin,* 173 Cal. 561, 565 [160 P. 833] ; *Pereira Farms Corp.* v. *Simas,* 69 Cal.App. 159, 163 [230 P. 976] ; *Bell* v. *Germain,* 12 Cal.App. 375, 378 [107 P. 630].)

■ Appellants make some contention that the description of the property assessed to plaintiff is insufficient to identify the land assessed, described as "That portion lying N. of the N. bank of Deer Creek in the SE¼ of the NE¼ of the NE¼," with the land claimed by plaintiff; that owing to changes in the banks of Deer Creek due to dredging, etc., the north bank of that stream could not be and was not established. But the evidence shows that the land assessed to plaintiff north of the north bank of the stream amounted to 3 acres or more, while this action involves but 1.72 acres; also the map shows the relative position of Deer Creek, and shows that plaintiff's south line fence is well north of it; and the evidence shows that said fence has always been maintained in its present position. Changes in the bank of Deer Creek did not, then, affect the boundaries of plaintiff's land as claimed in this action, and as the trial court impliedly has held that such

tract was included within the 3 acres upon which plaintiff paid taxes, the fact that plaintiff paid taxes upon the larger area of three or more acres cannot be held to establish as matter of law that he did not pay taxes assessed against the area claimed, which lies entirely within the portion of the 10-acre tract north of Deer Creek.

■ Appellants also argue that plaintiff failed to show that his parents paid taxes upon the property, or that taxes were paid prior to 1915, and that the absence of such showing establishes that they did not acquire title by adverse possession, and that, therefore, their possession cannot be "tacked" to plaintiff's possession for the purpose of showing continuous adverse possession. We are unable to see that plaintiff sought to "tack" the possession of his parents to his own possession for such purpose. Plaintiff's possession for the five years prior to the commencement of the action was sufficient to sustain his title by adverse possession, the other elements necessary to establish his title by prescription being shown. The prior possession by his parents, the use made by them of the land, the filing of the homestead by the husband and wife, and the execution of the deed by Alice Kendrick to her son, go to show open and notorious use and occupancy by them, and their claim of right to the area. As stated in *Park* v. *Powers*, 2 Cal.2d 590, 594-595 [42 P.2d 75] :

"Until 1923 the possession of the Park family lacked one of the essential elements to ripen into title by adverse possession—payment of taxes. As this action was not filed until January 21, 1931, adverse possession, including payment of taxes, dating from 1923, is sufficient to establish title in plaintiffs. However, the facts pertaining to the prior occupation and possession are material, as the possession of plaintiff D. W. Park is a continuation of the occupation by other members of his family, and the character of his possession must be determined with reference to the circumstances under which the occupancy of his family began and was perpetuated. (*Akley* v. *Bassett*, 189 Cal. 625, 643 [209 P. 576].)"

■ We think that the evidence is ample to support the conclusion that there was actual, open, notorious and uninterrupted occupancy and possession of the property in controversy by plaintiff's parents, and by him after their deaths; that such possession was under claim of title, that it was ex-

clusive and hostile against the various holders of the record title, that the property was cultivated annually, that it was protected by a substantial enclosure, and that plaintiff paid taxes assessed against same continuously for a period much in excess of five years. The judgment of the trial court is therefore affirmed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied September 16, 1944, and appellants' petition for a hearing by the Supreme Court was denied October 16, 1944.