### Richard M. BENSON, Plaintiff and Appellant,

v.

**A.R. TARALSETH, Kenneth M. Skuza and June T. Skuza, John Aitcheson and Thelma Aitcheson, Thomas K. Klimpel, Merle L. Zahn and Eunice A. Zahn, Bill L. Grosche and Bette J. Grosche, American Bank and Trust Company, Theodore W. Handeland and Ethel May Handeland, Defendants and Appellees.**

Civ. No. 10968.

Supreme Court of North Dakota.

Feb. 20, 1986.

Rehearing Denied March 19, 1986.

Teevens, Johnson, & Montgomery, Minot, for plaintiff and appellant; argued by Bruce R. Montgomery.

McGee, Hankla, Backes & Wheeler, Minot, for defendant and appellee A.R. Taralseth; argued by Robert A. Wheeler.

Kenner, Halvorson & Sturdevant, Minot, for defendants and appellees Kenneth M. Skuza and June T. Skuza, John Aitcheson and Thelma Aitcheson, Thomas K. Klimpel, Merle L. Zahn and Eunice A. Zahn, Bill L. Grosche and Bette J. Grosche, American Bank and Trust Company, Theodore W. Handeland and Ethel May Handeland; argued by Robert A. Wheeler and Harris P. Kenner.

ERICKSTAD, Chief Justice.

Richard M. Benson, plaintiff, appeals from the district court judgment and from the order denying his motion for a new trial. Benson's motion for a new trial challenged the court's conclusion that the defendants had acquired title, pursuant to Section 47–06–03, N.D.C.C., to several lots in the Lake Metigoshe area of Bottineau County. We affirm.

In September 1951 Ruby Benson acquired a parcel of undeveloped and unplatted land in the area of Lake Metigoshe in Bottineau County. The parcel of land was described as follows:

"COMMENCING at the Northeast corner of Lot 15 in First Addition to Central Park in Section 34, Township 164, Range 75, thence along said addition to the Northwest corner of Lot 7, thence due North 600 feet, thence due east 450 feet thence due South 600 feet to point of beginning being part of Lot 7, Sec. 34, T. 164 R. 75.

"ALSO Lots 14 and 15 in First Addition to Central Park above described."

Richard Benson acquired most of this parcel of land from the estate of Ruby Benson by a deed dated July 3, 1978, and recorded September 7, 1978.[1]

In 1956, Arthur Taralseth acquired a parcel of land adjacent to the undeveloped property then owned by Ruby Benson. Taralseth surveyed, subdivided and platted this land in 1960. A part of the Ruby Benson property was mistakenly included in this plat. That part of Ruby Benson's property included in the plat was part of lot 16 and lots 17 through 22 of what was platted by Taralseth as "First Addition of Longview Addition to Lake Metigoshe." Taralseth testified that he included this part of Ruby Benson's property in the plat because he mistakenly believed it was a part of the property he had purchased in 1956. The property actually purchased by Taralseth in 1956 only included lots 1 through 15 and part of lot 16.

In 1960 and 1961 Taralseth did some minor cleaning of the disputed premises and drove small stakes into the ground to mark the corners of lots 16 through 22.

Lot 17 was conveyed by Taralseth to defendants John and Thelma Aitcheson by a deed dated August 19, 1964, recorded March 25, 1965. A cabin was constructed by Aitchesons on lot 17 in August 1965.

Taralseth conveyed lot 18 to Vernon and Darlene Skaaden by deed dated August 2, 1965, recorded October 27, 1969. Skaadens conveyed lot 18 to defendant Thomas K. Klimpel and Mary Jane Klimpel by deed dated August 31, 1979, recorded February 20, 1980. Klimpels began construction of a cabin on lot 18 in 1980. This cabin was destroyed by a fire in January 1983.

Sometime prior to July 1966, Taralseth deeded lot 19 to Francis and Gloria Olson. In July 1966 Francis and Gloria Olson conveyed lot 19 to Oscar and Verna Olson. Oscar and Verna constructed a cabin on the lot and then conveyed it to Arlin Roland in June 1967. Roland conveyed lot 19 to defendants Merle and Eunice Zahn by a deed dated April 17, 1974, recorded April 18, 1974.

Lot 20 was conveyed by Taralseth to Erling and Luella Martinson by a deed dated August 2, 1965, recorded August 31, 1965. Construction of a cabin on lot 20 began in 1966. Defendants Bill and Bette Grosche are successors in interest to lot 20 through a chain of conveyances.

In 1964 Oscar Handeland received a deed to lot 21 from Taralseth. Improvements were made by Handeland on lot 21 beginning in April 1972. Taralseth deeded lot 22 to Handeland in 1963. Handeland built a cabin on this lot the same year. In 1977 Handeland deeded lots 21 and 22 to defendants Theodore and Ethel Handeland who are presently in possession of these lots.

The district court found that for more than ten years prior to the commencement of this action both Benson and the defendants had been paying taxes on the disputed premises. Benson was assessed and paid taxes as though the land was unplatted while the defendants were assessed taxes on the basis of the plat and improvements. Neither party was aware that the other party was also paying taxes. The County did not discover this double taxation because of the differing land descriptions.

In 1981 Taralseth discovered the overlapping property descriptions and informed Benson of the problem. On July 16, 1982, Benson commenced a quiet title action relative to lots 16 through 22. Taralseth responded by denying that Benson had any interest in lots 16 through 22. In the alternative, Taralseth asserted title to the land

---

1. Ruby Benson had conveyed certain tracts of this parcel of land to others before the land at issue was acquired by Richard Benson. Those tracts of land are not involved in this case.

was acquired by adverse possession for a period of more than 20 years pursuant to Section 28-01-04, N.D.C.C., or, that the land was acquired by undisputed possession under color of title for a period of more than ten years pursuant to Section 47-06-03, N.D.C.C.

The court concluded that Benson's predecessors in interest held title to the disputed premises prior to losing part of the premises through adverse possession. The court also concluded that the defendants did not have actual, open, and adverse possession for a period of 20 years, and thus, Section 28-01-04, N.D.C.C., was not applicable. It concluded, however, that there had been continuous actual, open, adverse, and undisputed possession of each lot by the defendants commencing at the following times:

"a) Lot 17 in August, 1965;

"b) Lot 18 in 1980;

"c) Lot 19 between July of 1966 and June, 1967;

"d) Lot 20 in 1966;

"e) Lot 21 in April, 1972;

"f) Lot 22 in summer, 1963;"

In addition, the court found that both the plaintiff and defendants had paid all the taxes levied for more than ten years prior to the commencement of this action. In light of these findings, the court concluded that the plaintiff had title to lot 18 and that the defendants had obtained title to lots 17, 19, 20, 21, and 22 by satisfying the requirements of Section 47-06-03, N.D.C.C. The court also found that the parties had stipulated to dismissal of Benson's claim as to lot 16.

On August 21, 1984, Thomas K. Klimpel filed a motion to amend the findings of fact made by the court to include the permanent improvements he had made to lot 18 which he alleged increased the value of the lot by $12,000. This motion also asked the court to amend the conclusions of law to include a lien on lot 18 in favor of Klimpel in the sum of $12,000. The court granted this motion.

Benson made a motion for a new trial pursuant to Rules 59(b)(6) and 59(c)(1) of the North Dakota Rules of Civil Procedure. In his brief in support of motion for new trial, Benson challenged the court's decision to grant Klimpel a $12,000 lien on lot 18, and the court's conclusion that the defendants had satisfied the requirements of Section 47-06-03, N.D.C.C., as it related to lots 17, 19, 20, 21, and 22. The court denied this motion.

Benson has appealed from the court's amended judgment and from the order denying his motion for a new trial. Two issues have been raised on appeal. First, whether or not the court erred in quieting title to lots 17, 19, 20, 21, and 22 in the name of the individual defendants. Second, whether or not the court erred in creating a $12,000 lien on lot 18 in favor of Klimpel for improvements made to lot 18.

The parties entered into an agreement dismissing Benson's claim as to lot 16. Accordingly, lot 16 is not involved in this appeal.

I

The court concluded that the defendants possessing lots 17, 19, 20, 21, and 22 had individually obtained title to these lots by satisfying the requirements of Section 47-06-03, N.D.C.C., which reads, in pertinent part:

"*Title to real property—Adverse possession.* —A title to real property, vested in any person who has been or hereafter shall be, either alone or including those under whom he claims, in the actual open adverse and undisputed possession of the land under such title for a period of ten years and who, either alone or including those under whom he claims, shall have paid all taxes and assessments legally levied thereon, shall be valid in law."

■ To be entitled to a decree of adverse possession the property of another must be held by open and hostile possession for a specific time. *Burlington Northern, Inc. v. Hall*, 322 N.W.2d 233, 241 (N.D.1982). Under Section 28-01-04, N.D.C.C., the required period of time is 20

years. Section 47–06–03, N.D.C.C., permits acquisition of title after 10 years if the adverse possession is under color of title coupled with the payment of taxes. *Cranston v. Winters*, 238 N.W.2d 647, 650 (N.D. 1976). The burden of proving adverse possession rests with the person alleging it and must be established by clear and convincing evidence. *Torgerson v. Rose*, 339 N.W.2d 79, 84 (N.D.1983); *Burlington Northern, Inc. v. Hall*, 322 N.W.2d at 241. The determination of whether or not there has been an adverse use is a question of fact which will not be set aside on appeal unless it is clearly erroneous. *Torgerson v. Rose*, 339 N.W.2d at 84; *Burlington Northern, Inc. v. Hall*, 322 N.W.2d at 241.

The first argument Benson makes to support his contention that Section 47–06–03, N.D.C.C., was not adequately satisfied by the defendants is that he did not have actual knowledge of the adverse possession until 1981 when he was informed that he had title to the property platted as lots 17 through 22. Benson contends that the adverse possession did not begin until 1981 when he received actual knowledge.

■ In *Woodland v. Woodland*, 147 N.W.2d 590, 597 (N.D.1967), we defined adverse possession to include not only actual possession but also "visible, continuous, notorious, distinct, and hostile, and of such character as to unmistakably indicate an assertion of claim of exclusive ownership by the occupant." We have since applied this definition on several occasions. *See Torgerson v. Rose*, 339 N.W.2d at 84; *Burlington Northern, Inc. v. Hall*, 322 N.W.2d at 241; *Cranston v. Winters*, 238 N.W.2d at 653; *Martin v. Rippel*, 152 N.W.2d 332, 338 (N.D.1967). Contrary to Benson's assertion, actual knowledge of the adverse possession is not necessary if there is a course of conduct directly hostile and these acts of hostility are "unmistakably clear." *Nelson v. Christianson*, 343 N.W.2d 375, 378 (N.D.1984); *Simons v. Tancre*, 321 N.W.2d 495, 499 (N.D.1982); *Brooks v. Bogart*, 231 N.W.2d 746, 751 n. 7 (N.D.1975). The district court apparently relied upon the construction of the cabins as the crucial

factor in establishing the openness of the adverse possession. Considering the size of the cabins and the other circumstances of this case, we do not believe the court's findings were clearly erroneous. We conclude that the construction of cabins such as the ones constructed on the lots in question does constitute conduct that is so directly hostile and unmistakably clear as to satisfy the necessary requirements for adverse possession.

■ Benson next argues that the defendants did not satisfy the statute because they did not pay *all* the taxes and assessments legally levied upon the property in dispute. The district court found that both parties had been paying taxes on the property in question. In essence, there had been double taxation and double payment. Neither party had actual knowledge of this double taxation and double payment. Benson argues that the defendants have not satisfied the ten-year statute as they did not pay *all* the taxes. They paid what was due but they did not pay the taxes which Benson paid. We do not believe the statute should be so construed.

This issue raised by Benson is one of first impression in North Dakota. Other jurisdictions which have addressed this issue have done so under similar statutes but with varying results. *See Erickson v. Wick*, 22 Wash.App. 433, 591 P.2d 804, 809 (1979), where the court held that where the true owner of the land paid the taxes legally levied thereon, the taxes paid by a third party must be deemed a double assessment levied through the assessor's error and thus were not "legally assessed;" *C & F Realty Corporation v. Mershon*, 81 N.M. 169, 464 P.2d 899, 901 (1969), where the court held that where both parties, apparently without knowledge of the double assessment or of the other's claim, paid the taxes in good faith, the fact that one party paid the respective assessment first is not an indication that the other party lacked good faith; *Cummings v. Laughlin*, 173 Cal. 561, 160 P. 833 (1916); *Cavanaugh v. Jackson*, 99 Cal. 672, 34 P. 509 (1893), where the court held that paying the taxes

assessed to a person is enough to satisfy the statute, and the number of times the land may have been assessed to and taxes paid by other parties is immaterial. In *Cummings v. Laughlin,* the California Supreme Court concluded:

> "The result was a double taxation and a double payment of taxes upon the disputed strip. Under such circumstances the claimant to title by adverse possession has fully complied with the law when he has paid the taxes upon the land, even though they have also been paid by the holder of the record title thereto." 160 P. at 834.

We believe that the California Court has applied a reasonable approach to this problem and, accordingly, we adopt it for this case.

Therefore, we conclude that the district court did not err in quieting title to lots 17, 19, 20, 21, and 22 in the name of the individual defendants based on the application of Section 47–06–03, N.D.C.C.

## II

We now address the issue relating to the propriety of imposing a $12,000 lien on lot 18 in favor of Klimpel where the evidence of adverse possession was insufficient in time to establish title.

On October 1, 1984, the court held a hearing to determine the value of the improvements made by Klimpel to lot 18. At the hearing, each party was given the opportunity to present evidence concerning the value of the improvements. After reviewing the evidence presented at the hearing, the court concluded that the improvements made by Klimpel valued $12,000. The court then granted Klimpel a $12,000 lien on lot 18.

In his brief on appeal, Benson argues that the district court's conclusion that the improvements made to lot 18 valued $12,-000 is clearly erroneous under Rule 52(a), N.D.R.Civ.P. In oral argument, counsel for Benson appeared to expand his argument to contend that the district court's decision to place a $12,000 lien on lot 18 was error, that the amount was excessive, that it constituted an abuse of discretion, was arbitrary, and that evidence was improperly admitted during the evidentiary hearing.[2]

The ultimate issue raised by Benson in the district court and the one he appears to be raising here on appeal is whether or not a person who has failed to establish title to another's property by adverse possession may gain a lien upon the other's property for the improvements made on the property. In other words, may an owner be forced to pay for improvements made on his property by a third party when the improvements were made without his knowledge or consent?

We believe that Section 32–17–09, N.D. C.C., disposes of this issue. It reads in pertinent part:

> "[I]n all cases where the plaintiff has made permanent improvements on the property in good faith, while in possession under color of title, he may recover the reasonable value thereof as against the defendant recovering the property when the reply shall allege the facts, stating particularly the value of the improvements and the value of the property, and shall demand appropriate relief."

In *Bichler v. Ternes,* 63 N.D. 295, 248 N.W. 185 (1933), our Court addressed the issue of whether or not a person should be compensated for improvements made on another person's land when the improvements were made in an honest mistake and in the belief that he was the true owner of the property. In resolving this issue, we said:

> "Where an occupant of real property has made improvements in the honest but mistaken belief that he was the owner, and where as a result of a judgment in an action to quiet title such occupant will be deprived of all interest in and to

---

**2.** Benson has failed to point to any specific evidence improperly admitted by the trial court

and accordingly we will not address this issue.

the property upon which such improvements are made, the judgment may properly provide against unjust enrichment of the owner to the extent of the improvements,...." 248 N.W. at 186.

We believe this rule is applicable to the case at hand, and, accordingly, the trial court was correct in imposing a lien for improvements Klimpel made to lot 18.

■ Before we may dispose of this issue, however, we must determine whether or not the evidence supports the conclusion that the improvements made by Klimpel to lot 18 value $12,000. At the evidentiary hearing, Klimpel introduced evidence totalling $23,795 in improvements and repairs to lot 18. Notwithstanding that evidence, Klimpel asked the court for an award of $12,000. Benson submitted no evidence relative to the value of the improvements made to lot 18 or contradicting the evidence presented by Klimpel.[3] The court concluded the value of the improvements made to lot 18 was $12,000.

A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Herb Hill Insurance v. Radtke*, 380 N.W.2d 651, 653 (N.D.1986); *Industrial Fiberglass v. Jandt*, 361 N.W.2d 595, 598 (N.D.1985). Although the district court could have more specifically identified the facts which caused it to conclude that the improvements to lot 18 valued $12,000, we are not left with a definite and firm conviction that a mistake was made and, therefore, do not believe that the decision of the court in awarding $12,000 for improvements is clearly erroneous. Accordingly, we affirm the judgment.

As the motion for new trial raises no issues not discussed in considering the issues raised on the appeal from the judgment, we find no abuse of discretion in the court's denial of the motion for new trial.

Accordingly, we affirm the order denying new trial.

VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

GIERKE, J. concurs in the result.

---

**3.** Benson presented an appraisal of lot 18 to our Court on appeal. This appraisal was apparently presented to the court below but not considered because it was presented after the conclusion of the hearing. It is not appropriate for us to consider that appraisal at this time.